# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF MICHIGAN

TONGLIN WANG, a foreign person,

        Plaintiff,

vs                                    Case No.
                                        Hon.

LIGHTSPEED ENVIRONMENTAL, INC.,
a Delaware corporation, LIGHTSPEED
ENVIRONMENTAL LTD., a Canadian
corporation, UNICELL BODY COMPANY, INC.,
a New York corporation, UNICELL LIMITED, a Canadian corporation,
AUTOMOTIVE SUPPORT GROUP, LLC, d/b/a
ASG RENAISSANCE, a Michigan limited liability company,
DAVID TARRANT, an individual Michigan
resident, ROGER J. MARTIN, an individual
Canadian resident, KIM KING, an
individual Michigan resident and HONG MILLER,
an individual Michigan resident,

        Defendants.

---

# COMPLAINT

        Plaintiff, Tonglin Wang, a foreign person and citizen of the People's Republic of China, by and through his attorneys, Butzel Long P.C. and Williams, Williams, Rattner & Plunkett, P.C., and for his Complaint states as follows:

## Parties, Jurisdiction and Venue

        1.      Plaintiff Tonglin Wang ("Mr. Wang") is a foreign person and citizen of the People's Republic of China.

        2.      Defendant LightSpeed Environmental, Inc. ("LightSpeed Inc.") is a Delaware corporation in good standing and which does substantial business in the State of Michigan through at least the activities described in this Complaint.

00731057.DOCX

3.      Defendant LightSpeed Environmental Ltd. ("LightSpeed Ltd.") is a Canadian corporation in good standing and which does substantial business in the State of Michigan through at least the activities described in this Complaint.

4.      Defendant Unicell Body Company, Inc. ("Unicell BC") is a New York corporation in good standing and which does substantial business in the State of Michigan through at least the activities described in this Complaint.

5.      Defendant Unicell Limited ("Unicell") is a Canadian corporation in good standing and which does substantial business in the State of Michigan through at least the activities described in this Complaint.

6.      Automotive Support Group, LLC d/b/a ASG Renaissance ("ASG") is a Michigan limited liability company in good standing and which does substantial business in the State of Michigan through at least the activities described in this Complaint.

7.      According to available public records, the websites of the entity Defendants and the representations of Defendants to Plaintiff, Defendant Roger J. Martin ("Martin") (i) is a resident of Canada; (ii) is an Officer and Chairman of the Board of LightSpeed Inc. and LightSpeed Ltd.; (iii) is an Officer, President, Chief Executive Officer and Chairman of the Board of Unicell BC; (iv) is an Officer and President of Unicell; (v) is an Officer of ASG; and (vi) does substantial business in the State of Michigan through at least the activities described in this Complaint.

8.      According to available public records, the websites of the entity Defendants and the representations of Defendants to Plaintiff, Defendant David Tarrant ("Tarrant") (i) is a resident of Michigan; (ii) is an Officer and Chief Executive Officer of LightSpeed Inc. and LightSpeed Ltd.; (iii) is a representative agent of Unicell BC, Unicell and ASG; and (iv) and

substantial business in the State of Michigan through at least the activities described in this Complaint.

9.     According to available public records and the websites of the entity Defendants, Defendant Kim King ("King") (i) is a resident of Michigan; (ii) is an Officer and General Counsel of LightSpeed, Inc. and LightSpeed Ltd.; (iii) is a representative agent of Unicell BC, Unicell and ASG; and (iv) does substantial business in the State of Michigan through at least the activities described in this Complaint.

10.     Defendant Hong Miller ("Hong") (i) is a resident of Michigan; (ii) a representative agent of LightSpeed Inc., LightSpeed Ltd., Unicell BC, Unicell and ASG; (iii) and whom does substantial business in the State of Michigan through at least the activities described in this Complaint.

11.     The matter in controversy involves questions of federal law and jurisdiction in this matter is proper under 28 U.S.C. § 1331.

12.     The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332 and jurisdiction in this matter is alternatively proper under 28 U.S.C. § 1332.

13.     Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(a) and (b)(2) because the actions or occurrences alleged in this Complaint occurred in Wayne County and Oakland County, Michigan and in the People's Republic of China and as such the causes of action accrued in whole or in part in this District.

14.     This Court has general jurisdiction over the resident individual Defendants pursuant to MCL § 600.701.

15.     This Court has general jurisdiction over the resident entity Defendants pursuant to MCL § 600.711.

16.     This Court has limited jurisdiction over the non-resident individual Defendants pursuant to MCL § 600.705 because the non-resident individual Defendants did substantial business in Wayne County and Oakland County, Michigan as individuals and as agents of corporate entity Defendants, through at least in the activities described in this Complaint, and each committed a violation of United States securities laws and several torts in Wayne County and Oakland County, Michigan, and such acts relate to the matters at issue in this Complaint.

17.     This Court has limited jurisdiction over the non-resident entity Defendants pursuant to MCL § 600.715 because the non-resident entity Defendants did substantial business in Wayne County and Oakland County, Michigan, at least in the activities described in this Complaint, and each non-resident entity Defendant committed a violation of United States securities laws and several torts in Wayne County and Oakland County, Michigan, and such acts relate to the matters at issue in this Complaint.

### General Allegations

18.     The claims in this case flow from a concerted civil conspiracy among Defendants to defraud Mr. Wang into making a $1,000,000.00 U.S. Dollar investment in LightSpeed, Inc., a worthless shell company registered in Delaware and represented, owned, and/or controlled by Defendants.

19.     Each of the Defendants in this matter, acting in concert in Wayne County and Oakland County, Michigan and acting in the same regard in the People's Republic of China ("China"), conspired to defraud Mr. Wang, through unlawful means and through the use of false pretenses, and in violation of U.S. securities laws and other common law, tort and statutory prohibitions.

20.     According to the website of LightSpeed Inc. and LightSpeed Ltd., those entities are involved in a partnership with Unicell BC and ASG among other financial partners to design,

develop, and launch Quicksider, the ultimate delivery vehicle built on a zero-emission, entirely electronic platform.

21.     Unicell, Unicell BC, Martin, Tarrant and ASG collectively own and/or control the controlling majority of the common, voting shares (securities) of LightSpeed Inc. and LightSpeed Ltd.

22.     Martin (i) as Chairman of the Board of LightSpeed Inc. and LightSpeed Ltd.; (ii) as an Officer, President, Chief Executive Officer and Chairman of the Board of Unicell BC; (iii) as an Officer and President of Unicell; (iv) and as an Officer of ASG, led, directed, controlled, and personally engaged in the conspiratorial activities of each of the corporate Defendants, Tarrant, King and Hong described herein.

23.     Tarrant (i) as Chief Executive Officer and shareholder of LightSpeed Inc. and LightSpeed Ltd.; (ii) as and a representative agent of Unicell BC, Unicell and ASG led, directed, controlled, and personally engaged in the conspiratorial activities of each of the corporate Defendants, King and Hong described herein.

24.     King (i) as General Counsel of LightSpeed, Inc. and LightSpeed Ltd.; (ii) as and a representative agent of Unicell BC, Unicell and ASG, directed, controlled, and personally engaged in the conspiratorial activities of each of the corporate Defendants and Hong described herein.

25.     Hong as a representative agent of LightSpeed Inc., LightSpeed Ltd., Unicell BC, Unicell and ASG personally engaged in the conspiratorial activities of each of the corporate Defendants described herein.

26.     Mr. Wang is a businessman and investor who resides in China.

27.     Mr. Wang does not speak, understand or read the English language.

00731057.DOCX

28.     In 2011, Mr. Wang was interested in investing in a U.S. entity to achieve certain immigration status in the U.S. through a federal immigration program.

29.     Mr. Wang's desire to make an investment in a U.S. entity was principally motivated, however, by a desire to make a profitable return on any such equity investment and Mr. Wang evaluated his options in this regard accordingly.

30.     Upon information and belief, at the end of 2010, Lightspeed Inc. financial statements indicated a net loss of $1,509,659.00 U.S. Dollars.

31.     Upon information and belief, at the end of 2011, Lightspeed Inc. financial statements indicated an additional net loss of $1,296,737.00 U.S. Dollars.

32.     Upon information and belief, Lightspeed Inc. had $102,524.42 in cash at the end of March 2011 and as of March 31, 2011; Lightspeed Inc's Balance sheet indicated total assets of $128,389.59 U.S. Dollars.

33.     Upon information and belief, in April, 2011 Hong and King travelled to China.

34.     In mid-April, 2011 Mr. Wang was introduced in Tianjin, China to Hong and King, persons he did not know, regarding making such a possible investment in a U.S. entity.

35.     Hong is a Chinese born person, who now, upon information and belief, is a U.S. green-card holder, who is educated and speaks and reads Mandarin Chinese and English.

36.     Hong indicated to Mr. Wang in mid-April, 2011 in Tianjin, China that Hong could serve as his business advisor and translator in connection with making Mr. Wang's possible investment in a U.S. entity for a fee payable to Hong by Mr. Wang or possibly by the ultimate investment vehicle.

37.     King indicated to Mr. Wang in mid-April, 2011 in Tianjin, China that King was a U.S. lawyer with experience in business and immigration matters who could represent Mr. Wang

00731057.DOCX

as his lawyer in connection with Mr. Wang's possible investment in a U.S. entity for a legal fee payable to King by Mr. Wang or possibly by the ultimate investment vehicle.

38.     Mr. Wang hired Hong and King and Hong and King agreed to work for Mr. Wang.

39.     Hong and King represented to Mr. Wang, orally and through written instruments such as business cards and other marketing materials that they had formed a business affiliation to represent Mr. Wang's interests (and perhaps others) through a business known as "Global Products Marketing" which purported to specialize in "Opening Doors" to foreign investment opportunities in U.S. businesses.  King also occasionally represented to Mr. Wang at relevant times that King is a member of the Bendure & King, PLLC law firm.

40.     At all relevant times, Hong and King communicated with Mr. Wang through e-mails between Hong and King in Michigan and Mr. Wang in China using the e-mail addresses Hong@globalproductsmarketing.com and Kim@globalproductsmarketing.com, respectively. King also occasionally communicated with Mr. Wang at relevant times using the email address Tking17@comcast.net .

41.     Hong and King earned Mr. Wang's trust and confidence as his business advisor /translator and lawyer, respectively, over several subsequent months of meetings in China and Michigan and e-mails and telephone conferences between Hong and King in Michigan and Mr. Wang in China.

42.     Mr. Wang communicated to Hong and King that his desire to invest in a U.S. entity was principally motivated by a desire to make a profit.

43.     On April 25th, 2011, Hong and King indicated to Mr. Wang by e-mail that they were working to find the optimal solution to his business and immigration needs and expressed the hope that the three would become good friends and business associates.

7

44.     On May 14, 2011, Hong and King expressed to Mr. Wang by e-mail that they had consulted with "a few companies" in the U.S. regarding an investment by Mr. Wang and were awaiting responses.

45.     In this same e-mail on May 14, 2011, Hong and King urged Mr. Wang to pursue a qualified U.S. EB-5 immigration program investment rather than an alternate L-1 or other visa option that did not require a significant equity investment.

46.     Upon information and belief, Lightspeed Inc. had $26,271.02 in cash at the end of June 2011 and as of June 30, 2011, Lightspeed Inc's Balance Sheet indicated total assets of $52,136.19 U.S. Dollars.

47.     On July 13, 2011, Mr. Wang and his wife traveled to Michigan on the invitation of Hong and King to visit potential investment opportunities.

48.     On the afternoon of July 13, 2011, Hong and King introduced Mr. Wang to Tarrant on a boat in Michigan.

49.     During meetings beginning on July 14, 2011 and continuing through July 17, 2011 at the purported Farmington Hills, Michigan offices of LightSpeed Inc., Hong, King and Tarrant introduced Mr. Wang to the possibility of buying securities in LightSpeed Inc.

50.     During meetings beginning on July 14, 2011 and continuing through July 17, 2011, Hong, King and Tarrant provided Mr. Wang with written documents in English and made verbal representations translated by Hong, which promoted LightSpeed Inc. as a viable business investment with an estimated pre-money equity value of approximately $30,000,000 U.S. Dollars.

51.     During meetings beginning on July 14, 2011 and continuing through July 17, 2011, Hong, King and Tarrant represented to Mr. Wang that, among other representations, LightSpeed Inc. had designed, developed and launched a mass transit vehicle known as

Quicksider, which Hong, King and Tarrant represented as the ultimate mass transit delivery vehicle built on a zero-emission, entirely electronic platform.

52.     During meetings beginning on July 14, 2011 and continuing through July 17, 2011, Hong, King and Tarrant represented to Mr. Wang through written documents in English and verbal communications translated by Hong, that LightSpeed Inc. owned all of the relevant legal rights to Quicksider, including but not limited to all intellectual property rights.

53.     During meetings beginning on July 14, 2011 and continuing through July 17, 2011, Hong, King and Tarrant represented to Mr. Wang through written documents in English and verbal communications translated by Hong, that research conducted by LightSpeed Inc. confirmed the existence of a significant market existed in the United States, China and globally for Quicksider.

54.     During meetings beginning on July 14, 2011 and continuing through July 17, 2011, Hong, King and Tarrant represented to Mr. Wang through written documents in English and verbal communications translated by Hong, that LightSpeed Inc. needed limited additional equity investment(s) to take its enterprise into the next production phase of Quicksider and fulfill LightSpeed Inc.'s existing purchase orders from customers.

55.     On the morning of July 17, 2011, Hong, King and Tarrant visited Mr. Wang at his hotel in Michigan and Tarrant, to the surprise of Mr. Wang, requested that Mr. Wang sign a Memorandum of Understanding to invest in LightSpeed Inc.

56.     When questioned by Mr. Wang, Hong, King and Tarrant represented to Mr. Wang that the Memorandum of Understanding was of no legal effect and was non-binding and, therefore, did not need to be translated into Chinese.

57.     On July 17, 2011, Hong, King and Tarrant urged Mr. Wang to invest $1,000,000.00 U.S. Dollars in the securities of LightSpeed Inc.

9

58.     On September 16, 2011, King e-mailed Mr. Wang from Michigan to China advising him that LightSpeed Inc.'s internal efforts to raise equity were coming to an end, and King urged Mr. Wang to deposit an initial $200,000.00 U.S. Dollars immediately of the total $1,000,000.00 U.S. Dollar investment, in order to preserve a 20% preferential premium on his investment in the securities of LightSpeed Inc.

59.     On September 18 through 22, 2011, Hong, King and Tarrant travelled to Tianjin, China to meet Mr. Wang and discuss his potential immediate investment of $1,000,000.00 U.S. Dollars in the securities of LightSpeed Inc. independently and in connection with his immigration interests.

60.     On September 18 through 22, 2011, at the Tianjin Sheraton Hotel in Tianjin, China, Tarrant and King, through Hong's translations, indicated to Mr. Wang that Tarrant and King had persuaded LightSpeed Inc.'s Board of Directors to delay the internal equity raising deadline to accommodate Mr. Wang's investment.

61.     On September 18 through 22, 2011, at the Tianjin Sheraton Hotel in Tianjin, China, Tarrant, through Hong's translations, indicated to Mr. Wang that if he invested immediately in LightSpeed Inc., he would still receive a 20% preferential premium on his investment in the form of 20,000 extra Series A Preferred Shares in LightSpeed Inc.

62.     On September 28 through October 4, 2011, in Tianjin, China, at the Tianjin Crystal Hotel, Tarrant and King, through Hong's translations, again urged Mr. Wang to expedite his investment of $1,000,000.00 U.S. Dollars in the securities of LightSpeed Inc. by further enticing Mr. Wang with promises of a consultancy role in China in furtherance of LightSpeed Inc.'s alleged imminent expansion into China, specifically promising Mr. Wang a role in negotiating with the Tianjin Hi Tech Park for the location of a LightSpeed Inc. factory.

10

63.     Upon information and belief, Lightspeed Inc. had $1,143.98 in cash at the end of September 2011 and as of September 30, 2011, Lightspeed Inc's Balance sheet indicated total assets of $27,009.15 U.S. Dollars.

64.     On or about September 30, 2011, Tarrant, or his agent, on behalf of Defendants, sent Mr. Wang at his business address in China from Defendants' purported business address in Farmington Hills, Michigan correspondence enclosing certain documents regarding the Series A Preferred Stock in LightSpeed, Inc.

65.     Enclosed with Tarrant's September 30, 2011 correspondence was a September 30, 2011 Memorandum of Terms which described the current valuation of LightSpeed, Inc. at $29,966,250.00 U.S. Dollars "pre-money" and which, among other things, offered 120,000 shares of Series A Preferred Stock in LightSpeed, Inc. in exchange for a $1,000,000.00 U.S. Dollars cash investment, with the transaction being set to close on or about October 1, 2011.

66.     Also enclosed with the September 30, 2011 correspondence was a proposed Subscription Agreement between Mr. Wang and LightSpeed, Inc.

67.     The September 30, 2011 correspondence also terminated and held of no further force and effect the earlier Memorandum of Understanding dated July 17, 2011 between Mr. Wang and LightSpeed, Inc.

68.     On or about October 4, 2011, Mr. Wang asked Hong and King to translate and interpret the Subscription Agreement.  On or about October 4, 2011, Hong and King explained to Mr. Wang that there was nothing for Mr. Wang to be concerned with given: (i) the pre-money value of LightSpeed Inc. of approximately $30,000,000.00 U.S. Dollars; (ii) Lightspeed Inc. owned all of the relevant legal rights to Quicksider, including but not limited to all intellectual property rights; (iii) the existence of a significant market in the United States, China and globally for Lightspeed; (iv) Lightspeed Inc. only needed limited additional equity investment(s) to take

11

its enterprise into the next production phase of Quicksider and fulfill LightSpeed Inc.'s existing purchase orders from customers; and; (iv) the 20% preferential premium on his investment referenced above. On or about October 4, 2011, King, with Hong's translations, further stated that Hong and King are Mr. Wang's "family" and that the Subscription Agreement had been drafted by King as his lawyer and had been fully examined for Mr. Wang's benefit.

69.     On or about October 4, 2011, Mr. Wang signed the Subscription Agreement between himself and LightSpeed, Inc. with Tarrant signing for LightSpeed, Inc.

70.     On or about October 4, 2011, Mr. Wang wired $1,000,000.00 U.S. Dollars to LightSpeed Inc.'s bank account as provided by Hong, King and Tarrant, in furtherance of Mr. Wang's equity investment in the securities of LightSpeed, Inc.

71.     On or about October 5, 2011, Hong, King and Tarrant left China and returned to the United States.

72.     Mr. Wang relied upon Hong as his purported trusted business advisor and translator and King as his purported trusted lawyer in selecting LightSpeed Inc. as an investment presented to him in the United States and in China between April and October, 2011.

73.     Mr. Wang relied upon Hong as his purported trusted business advisor and translator and King, as his purported trusted lawyer in signing the Subscription Agreement and making his investment in the securities of LightSpeed Inc. on October 4, 2011.

74.     None of Hong, King or Tarrant disclosed to Mr. Wang during meetings in China and Michigan between April and October, 2011 that Hong and King were in reality exclusive agents of LightSpeed Inc. working at the direction of LightSpeed Inc., LightSpeed, Ltd., Unicell, Unicell BC, ASG, Martin and Tarrant.

75.     None of Hong, King or Tarrant disclosed to Mr. Wang during meetings in China and Michigan between April and October, 2011 that LightSpeed Inc. did not own or control the

12

relevant legal rights to Quicksider, including but not limited to all intellectual property rights, and that said rights were actually owned by Unicell, Unicell BC and/or ASG.

76.     None of Hong, King or Tarrant disclosed to Mr. Wang during meetings in China and Michigan between April and October, 2011 that LightSpeed Inc. in reality had no pre-money equity value, was desperately running out of cash, had not designed, developed or launched Quicksider and, upon information and belief, had no purchase orders from customers.

77.     Mr. Wang relied completely on Hong and King for translation and for business and legal advice with respect to Mr. Wang's understanding of the written and verbal information provided by Hong, King and Tarrant regarding LightSpeed Inc., and Mr. Wang was not in a position to understand or evaluate the information independently in light of the language and cultural barriers known to Defendants.

78.     Hong and King, acting at the direction of and in concert with LightSpeed Inc., LightSpeed, Ltd., Unicell, Unicell BC, ASG, Hong and Tarrant, deliberately preyed on Mr. Wang's vulnerability in this respect and his sense of family and friendship and essentially told Mr. Wang only what Defendants designed for him to hear and they did not provide Mr. Wang with access to the truth behind LightSpeed Inc.'s worthless shell company status.

79.     The representations described above by Hong, King and Tarrant to Mr. Wang, acting at the direction of Martin, LightSpeed Inc., LightSpeed, Ltd., Unicell, Unicell BC and ASG regarding LightSpeed Inc., were false and misleading statements of material facts and/or constituted omissions of material facts necessary to make such statements not misleading, and such misrepresentations and/or omissions were designed to solicit and consummate the sale of securities to Mr. Wang.

13

80.     Based on the above-described material misrepresentations and omissions by Defendants, Mr. Wang invested $1,000,000.00 U.S. Dollars in exchange for 120,000 shares of the Series A Preferred Stock or securities of LightSpeed, Inc.

81.     On or about November 15, 2011, Mr. Wang received a Stock Certificate certifying that Mr. Wang is the holder of 120,000 shares of the Series A Preferred Stock of LightSpeed, Inc.

82.     Between November 30 and December 2, 2011, Mr. Wang travelled to Toronto, Canada to the headquarters of Unicell and met with Martin, Tarrant, King and Hong to discuss his equity investment in the securities of LightSpeed, Inc and to attend a LightSpeed, Inc shareholders meeting.

83.     During these meetings between November 30, and December 2, 2011, Hong again purported to provide business advice and translation services to Mr. Wang on his behalf and King purported to provide legal services to Mr. Wang on his behalf.

84.     In furtherance of Defendants' conspiracy to defraud Mr. Wang, during these meetings between November 30 and December 2, 2011, Martin and Tarrant, in the presence of Hong and King, verbally communicated information to Mr. Wang, through the translation of Hong, that reaffirmed the viability LightSpeed, Inc. as a business investment with an estimated pre-money equity value of approximately $30,000,000.00  U.S. Dollars.

85.     In furtherance of Defendants' conspiracy to defraud Mr. Wang, during these meetings between November 30, and December 2, 2011, Martin and Tarrant, in the presence of Hong and King, reaffirmed Mr. Wang's understanding from Hong, Tarrant and King that LightSpeed, Inc. had designed, developed and launched Quicksider and that LightSpeed, Inc. owned all of the relevant legal rights to Quicksider, including but not limited to all intellectual property rights.

14

2:12-cv-14283-SFC-MAR   Doc # 1   Filed 09/26/12   Pg 15 of 25   Pg ID 15

86.     In furtherance of Defendants' conspiracy to defraud Mr. Wang, during these meetings between November 30, and December 2, 2011, Martin and Tarrant, in the presence of Hong and King, also represented to Mr. Wang that research conducted by LightSpeed, Inc. confirmed that a significant market existed in the United States, China and globally for Quicksider.

87.     In furtherance of Defendants' conspiracy to defraud Mr. Wang, at no time during the these meetings between November 30, and December 2, 2011, did Martin, Tarrant, Hong or King disclose to Mr. Wang that Hong and King were, in reality, exclusive agents of LightSpeed, Inc. working at the direction of and in concert with LightSpeed, Inc., LightSpeed Ltd., Unicell, Unicell BC, ASG, Martin and Tarrant.

88.     In furtherance of Defendants' conspiracy to defraud Mr. Wang, at no time during the these meetings between November 30, and  December 2011, did Martin, Tarrant, Hong or King disclose to Mr. Wang that LightSpeed, Inc. did not own or control the relevant legal rights to Quicksider, including but not limited to all intellectual property rights, or that said rights were actually owned by Unicell, Unicell BC or ASG or that Unicell, Unicell BC and/or ASG had already enriched themselves or intended to enrich themselves subsequently with the proceeds of Mr. Wang's investment in LightSpeed, Inc. by charging LightSpeed, Inc. fees and other amounts to gain access to both the intellectual property rights to Quicksider and the employees of Unicell, Unicell BC and/or ASG with the alleged know-how as to how Quicksider could actually someday be developed.

89.     In furtherance of Defendants' conspiracy to defraud Mr. Wang, at no time during the these meetings between November 30, and December 2011, did Martin, Tarrant, Hong or King disclose to Mr. Wang that LightSpeed, Inc. in reality had no pre-money equity value, had not designed, developed or launched Quicksider and had no purchase orders from customers or

15

00731057.DOCX

that Mr. Wang's investment would be, in effect, the first and only substantial "real money in" relative to LightSpeed, Inc.

90.     On or about December 1, 2011, King requested Mr. Wang to sign a Registration Rights Agreement that was presented solely in English.

91.     On or about December 1, 2011, Mr. Wang asked King to explain the Registration Rights Agreement.  On or about December 1, 2011, King explained through Hong's translations, that the Registration Rights Agreement was drafted by King, and there were several strict provisions, requiring his signature.   King further stated that King's father, who is himself an attorney, had reviewed the document and "there will be no problem".

92.     On or about December 1, 2011, Mr. Wang signed the above-referenced Registration Rights Agreement between Mr. Wang and LightSpeed, Inc.

93.     In connection with Mr. Wang's execution of each of the above-referenced documents and instruments, Mr. Wang relied on Defendants' agents Hong and King for translation and for business and legal advice with respect to his understanding of the information contained therein as he was not in a position to understand and evaluate the information independently in light of the significant language and cultural barriers known to Defendants.

94.     The Class A Preferred Stock in LightSpeed, Inc. is non-voting and non-controlling.

95.     Upon information and belief, as of the date of the filing of this Complaint, Mr. Wang is the only significant equity investor or person with any substantial "skin in the game" relative to LightSpeed, Inc.

96.     As indicated above, Unicell, Unicell BC, Tarrant and ASG collectively own and control the controlling majority of the common, voting shares of LightSpeed, Inc.

00731057.DOCX

97.      In direct contradiction to oral and written representations by Defendants to Mr. Wang on the dates described above, LightSpeed, Inc. is in reality an entity without equity value, without a product, without intellectual property, without employees and without assets of any significant value.

98.      In direct contradiction to oral and written representations by Defendants to Mr. Wang on the dates described above, financial documents supplied to Mr. Wang by Defendants under demand under Delaware corporation law, demonstrate that LightSpeed Inc. has a negative net worth and Defendants have enriched themselves with the proceeds of Mr. Wang's investment into LightSpeed, Inc. by charging LightSpeed, Inc. fees and other amounts to gain access to both the intellectual property rights to Quicksider and the employees of Unicell, Unicell BC and/or ASG with the alleged know-how as to how Quicksider could actually someday be developed.

99.      In furtherance of Defendants' collective conspiracy, LightSpeed, Inc. is a worthless shell company owned and controlled by Defendants who have since the date of Mr. Wang's investment siphoned off the cash from Mr. Wang's $1,000,000.00 U.S. Dollar investment into the operations of Unicell, Unicell BC and/or ASG for the collective financial benefit of Defendants and to Mr. Wang's financial detriment.

100.     Upon information and belief, Lightspeed Inc. had $255,829.23 in cash at the end of December 2011 and as of December 31, 2011, Lightspeed Inc's Balance Sheet indicated total assets of $256,029.23 U.S. Dollars.

101.     Upon information and belief, Lightspeed Inc. had $35,100.27 in cash at the end of March 2012 and as of March 31, 2011, Lightspeed Inc's Balance sheet indicated total assets of $37,300.27 U.S. Dollars.

102.    Upon information and belief, Defendants' conspiracy has resulted in Mr. Wang's total loss of Mr. Wang's $1,000,000.00 U.S. Dollar investment in the securities of LightSpeed, Inc.

103.    The concerted representations to Mr. Wang described above by Defendants were false and misleading statements of material facts and/or constituted omissions of material facts necessary in order to make such statements not misleading, and such misleading statements and/or omissions were designed to solicit and consummate the sale of securities to Mr. Wang.

104.    Acting in furtherance of their conspiracy to defraud Mr. Wang, Defendants collectively and deliberately preyed on Mr. Wang's known vulnerability based on language and cultural barriers and on Mr. Wang's sense of family and friendship and Defendants essentially told Mr. Wang only what Defendants designed for him to hear and purposely did not provide Mr. Wang with access to the truth behind LightSpeed Inc.'s worthless shell company status.

105.    LightSpeed Inc., LightSpeed Ltd. Unicell, Unicell BC and ASG are alter egos or mere instrumentalities of one another and as such any separate corporate existence between them must be disregarded by a piercing of the corporate veil in order to avoid injustice.

106.    Facts tending to show the existence of an alter ego relationship between Defendant entities are all present in this case and include: (i) shared principal offices of the entity Defendants (ii) the shared board members and/or executives of the entity Defendants; (iii) the subsidiary entity Defendant's purchase of  services and rights exclusively from the parent entity Defendant; (iv) the severe undercapitalization of the subsidiary entity Defendant; (v) the parent entity Defendant directed policies and decisions of the subsidiary entity Defendant and; (vi) the parent entity's treatment of the subsidiary's project as its own.

00731057.DOCX

## COUNT I

### Civil Conspiracy; All Defendants

107.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 106 as if fully set forth herein.

108.    Based on the actions described above, each of the Defendants in this matter, acting in concert in Wayne County and Oakland County, Michigan and acting in the same regard in China, conspired to defraud Mr. Wang, through unlawful means and through the use of false pretenses, in violation of U.S. securities laws and other common law, tort and statutory prohibitions, as a means to defraud Mr. Wang to their collective financial benefit and to Mr. Wang's financial detriment.

WHEREFORE, Plaintiff Tonglin Wang demands judgment in his favor and against Defendants, jointly and severally, for compensatory and special damages, interest, costs, attorneys' fees and such other and further relief as this Court deems just and proper.

## COUNT II

### Violation of Sections 10(b) and Rule 10B-5 of the 1934 Securities Exchange Act, 15 U.S.C. § 78j(I), et seq.; All Defendants

109.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 108 as if fully set forth herein.

110.    Based on the above facts, Defendants have employed devices, schemes and artifices in connection with the purchase and sale of securities, by use of means of interstate commerce and of the mail, to defraud Plaintiff in the purchase and sale of securities in violation of Section 10(b) and Rule 10b-5 of the 1934 Securities Exchange Act, 15 U.S.C. §78j(l) and 17 C.F.R. §240.10b-5.

111.    Based on the above facts, Defendants have intentionally made false and misleading statements of material facts and/or have omitted material facts necessary to make

00731057.DOCX

such statements not misleading in order to solicit and consummate the purchase and sale of securities by Plaintiff.

112.   Based on the above facts, Plaintiff in agreeing to invest funds reasonably relied on the intentional misrepresentations and and/or material omissions and was misled by such misrepresentations and/or material omissions and by the deception of Defendants, made in their collective capacities.

113.   Plaintiff has been harmed by the intentional misrepresentations, material omissions, and deception of Defendants in the investment of funds in the manner outlined in this Complaint.

WHEREFORE, Plaintiff Tonglin Wang demands judgment in his favor and against Defendants, jointly and severally, for compensatory and special damages, interest, costs, attorneys' fees and such other and further relief as this Court deems just and proper.

## COUNT III

### Violation of Section 20(a) of the 1934 Securities Exchange Act; 15 U.S.C.§ 78t(a); Control Person Liability; <u>Defendants Martin, Tarrant and King</u>

114.   Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 113 as if fully set forth herein.

115.   Based on the above facts, Defendants Martin, Tarrant and King are persons liable under §20(a) of the 1934 Securities Exchange Act, 15 U.S.C. §78t(a), for violations of Section 10(b) and Rule 10(b)(5) of the 1934 Act, each as a "person who directly or indirectly controlled" LightSpeed Inc., within the meaning of Rule 405, 17 C.F.R. §230.405(f) of the 1934 Securities Exchange Act, and who is therefore liable under Section 10(b) and Rule 10(b)(5) of the 1934 Act.

WHEREFORE, Plaintiff Tonglin Wang demands judgment in his favor and against Defendants Martin, Tarrant and King, jointly and severally, for compensatory and special damages, interest, costs, attorney fees and such other and further relief as this Court deems just and proper.

## COUNT IV

### Violation of Section 12(a)(2) of the Securities Act of 1933, 15 U.S.C.§771(2); All Defendants

116.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs·1 through 115 as if fully set forth herein.

117.    Based on the above facts, Defendants are liable to Plaintiff relative to the offer or sale of a security by the use of the means or instrumentalities of transportation or communication devices in interstate commerce, including the mails, by means of written or oral communications, including false statements, misstatements and omissions that were provided by Defendants to Plaintiff in order to solicit Plaintiff's investment in LightSpeed Inc., and such written and oral communication in this case included untrue and misleading statements and omissions of material fact in violation of§12(a)(2) of the Securities Act of 1933, 15 U.S.C. §771(2).

WHEREFORE, Plaintiff Tonglin Wang demands judgment in his favor and against Defendants, jointly and severally, for compensatory and special damages, interest, costs, attorneys' fees and such other and further relief as this Court deems just and proper.

## COUNT V

### Violations of Section 15 of the Securities Act of 1933, 15 U.S.C. § 770; Control Person Liability; Defendants Martin, Tarrant and King

118.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 117 as if fully set forth herein.

119.    Based on the above facts, Defendants are persons liable under §15 of the Securities Act of 1933, 15 U.S.C. § 170, for the violations of§12(a)(2) of the Securities Act of 1933 as "persons by and through stock ownership, agency or otherwise, controlling any person liable under Sections 77k or 771."

120.    Based on the above facts, Defendants are such control persons liable under §15 of the Securities Act of 1933, 15 U.S.C.  170, for violations of§12(a)(2) of the Securities Act of 1933.

00731057.DOCX

WHEREFORE, Plaintiff Tonglin Wang demands judgment in his favor and against Defendants Martin, Tarrant, and King, jointly and severally, for compensatory and special damages, interest, costs, attorney fees and such other and further relief as this Court deems just and proper.

## COUNT VI

## Violation of Section 17(A) of the Securities Act of 1933, 15 U.S.C. § 77q(A); All Defendants

121.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 120 as if fully set forth herein.

122.    Based on the above facts, Defendants have employed devices, schemes and artifices in connection with the purchase and sale of securities, by use of means of interstate commerce, and of the mail, to defraud Plaintiff in the purchase and sale of securities in violation of Section 10(b) and Rule 10b-5 of the 1934 Securities Exchange Act; 15 U.S.C. §78j(l) and 17 C.F.R. §240.10b-5.

123.    Based on the above facts, Defendants have intentionally made false and misleading statements of material facts and/or have omitted material facts in order to solicit and consummate the purchase and sale of securities.

124.    Based on the above facts, Plaintiff reasonably relied on the intentional misrepresentations and omissions, and was misled by Defendants, in agreeing to invest in LightSpeed Inc.

125.    Based on the above facts, Plaintiff has been harmed by the intentional misrepresentations, omissions, and deception of Defendants in the investment of the funds in LightSpeed Inc. in the manner outlined in this Complaint.

WHEREFORE, Plaintiff Tonglin Wang demands judgment in his favor and against Defendants, jointly and severally, for compensatory and special damages, interest, costs, attorneys' fees and such other and further relief as this Court deems just and proper.

00731057.DOCX

## COUNT VII

## **Fraud; All Defendants**

126.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 125 as if fully set forth herein.

127.     The misrepresentations outlined above were false statements and omissions of existing material fact that, at the time the Defendants made them, the Defendants knew, or were reckless in not knowing, were untrue and/or were suggestive of facts that were untrue.

128.     Defendants knew that their representations and omissions were material to the Plaintiff, and the Defendants made these misrepresentations and omissions with the intent that the Plaintiff would rely upon them.

129.     Plaintiff reasonably relied upon these misrepresentations and omissions to his detriment by investing funds in LightSpeed Inc.

130.     As a direct and proximate result of his reliance upon the Defendants' misrepresentations and omissions, the Plaintiff has been damaged.

WHEREFORE, Plaintiff Tonglin Wang demands judgment in his favor and against Defendants, jointly and severally, for compensatory and special damages, interest, attorneys' fees costs, and such other and further relief as this Court deems just and proper.

## COUNT VIII
## **Negligent Misrepresentation; All Defendants**

131.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 130 as if fully set forth herein.

132.     The misrepresentations outlined above were false statements of existing material fact that, at the time the Defendants made them, the Defendants knew, or were negligent and reckless in not knowing, were untrue.

133.     Defendants made these misrepresentations either with the intent that the Plaintiff would rely upon them or made said representations without reasonable care.

23

134.     Plaintiff reasonably relied upon these misrepresentations to his detriment by investing funds in LightSpeed Inc.

135.     As a direct and proximate result of his reliance upon the Defendants' misrepresentations, the Plaintiff has been damaged.

WHEREFORE, Plaintiff Tonglin Wang demands judgment in his favor and against Defendants, jointly and severally, for compensatory and special damages, interest, costs, attorneys' fees and such other and further relief as this Court deems just and proper.

## COUNT IX

### Breach of Fiduciary Duty; Defendants Martin, Tarrant and King

136.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 135 as if fully set forth herein.

137.     Based on the above facts, Martin, Tarrant and King as Officers and Directors of LightSpeed Inc., have breached common law fiduciary duties and obligations to Plaintiff, as a beneficial shareholder in LightSpeed Inc., with regard to the disposition of the invested funds.

138.     Martin, Tarrant and King owed the Plaintiff a fiduciary duty, which arose from the fact that the Plaintiff, as a beneficial shareholder of LightSpeed Inc., reposed great trust and reliance in Martin, Tarrant and King, Officers and Directors of LightSpeed Inc., to properly protect the Plaintiff's investment in LightSpeed Inc. Martin, Tarrant and King voluntarily accepted this trust and confidence.

139.     As fiduciaries, Martin, Tarrant and King owed the Plaintiff the following duties:

(a)     the duty to refrain from self-dealing;

(b)     the duties of loyalty and good faith;

(c)     the overall duty not to take unfair advantage and to act in the best interest of the other party;

(d)     the duty of honesty;

24

      (e)     the duty to disclose all material facts;

      (f)     the duty to place the Plaintiff's interests before and above their own interests; and

      (g)     the utmost duty of good faith and fair dealing.

140.    Martin, Tarrant and King breached their fiduciary duty to the Plaintiffs by failing to properly protect the Plaintiff's investment in LightSpeed Inc., as set forth herein.

141.    As a direct and proximate result of Martin, Tarrant and King's collective actions, the Plaintiff has suffered damages.

WHEREFORE, Plaintiff Tonglin Wang demands judgment in his favor and against Martin, Tarrant and King, jointly and severally, for compensatory and special damages, interest, costs, attorneys' fees and such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

The Plaintiff demands a jury trial on all issues so triable as of right.

Respectively submitted,

BUTZEL LONG, P.C.

       /s/*Benjamin Fan Wu*

BY:   BENJAMIN FAN WU  (P70946)
       150 W. Jefferson, Suite 100
       Detroit, MI  48226
       (313) 225-7080
       wu@butzel.com
       *Co-counsel for Plaintiff*

WILLIAMS, WILLIAMS, RATTNER & PLUNKETT, P.C.

       /s/*Richard E. Rassel*

BY:   RICHARD E. RASSEL  (P57540)
       WAYNE WALKER (P51290)
       380 N. Old Woodward, Suite 300
       Birmingham, MI  48009
       (248) 642-0333
       rer@wwrplaw.com
       *Co-counsel for Plaintiff*

Dated:  September 26, 2012

00731057.DOCX