UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Tonglin Wang,

      Plaintiff,

v.                                                          Case No. 12-14283

Lightspeed Environmental, Inc., *et al.*,           Sean F. Cox
                                                    United States District Court Judge
      Defendants.

_____/

## OPINION & ORDER

      Plaintiff brought this action against multiple Defendants, following a million-dollar investment he made in a company, asserting security-law and tort claims. Several motions are currently pending before the Court. The Court concludes that oral argument would not aid the decisional process as to the pending motions and orders that they shall be decided without further oral argument. As explained below, the Court shall:

1)      DENY Plaintiff's Motion to Compel Limited Discovery (D.E. No. 53);

2)      DENY Plaintiff's "Motion To Strike Notice Of Joinder And Application For Entry Of Default And Default Judgment" (D.E. No. 50);

3)      GRANT IN PART AND DENY IN PART Defendants' Motions that raise substantive challenges (D.E. Nos. 18 & 54), and shall:

      a)      Dismiss Plaintiff's Section 12(a)(2) claims in Count IV because he does not allege that this was a public offering, that a prospectus existed, or that there were any oral communications regarding a prospectus;

      b)      Dismiss Count V, which asserts control person liability under Section 12(a)(2)

1

  c)  Deny the motion as to the challenges asserted as to Plaintiff's
      10(b) and 17(a) Claims in Count II, because Plaintiff has
      sufficiently alleged specific misrepresentations, justifiable reliance,
      and scienter;

  d)  Deny the motion as to the challenge to the control person liability
      claim under Section 10(b) and Rule 10(b)(5);

  e)  Deny the motion as to Plaintiff's common law fraud and negligent
      misrepresentations claims in Counts VII & VIII;

  f)  Dismiss Plaintiff's breach of fiduciary duty claims asserted in
      Count IX; and

  g)  Deny the motion as to Plaintiff's civil conspiracy claims asserted in
      Count I.

4)  GRANT Defendant Martin's Motion to Dismiss for Lack of Personal
    Jurisdiction (D.E. No. 16);

5)  DENY Defendant Unicell B.C.I.'s Motion To Dismiss for Lack of Personal
    Jurisdiction (raised in D.E. No. 18); and

5)  DENY Defendant LightSpeed E.I.'s Motion For Security Of Costs (D.E. No. 32).

Thus, the Court is dismissing Counts IV, V, and IX and all other Counts shall proceed to

discovery. The Court shall hold a Scheduling Conference in this matter on January 21, 2013, so

that it can issue a Scheduling Order in this case.

## BACKGROUND

**A. Procedural History**

  Plaintiff Tonglin Wang ("Plaintiff" or "Wang") filed this action on September 26, 2012,

asserting both diversity and federal-question jurisdiction.

  On November 13, 2012, Defendants Lightspeed Environmental Ltd., Unicell Limited, and

Martin filed a Motion to Dismiss for Lack of Personal Jurisdiction. (D.E. No. 16).

On November 21, 2012, Defendants Lightspeed Environmental, Inc., Automotive Support Group, LLC, Tarrant, King, and Miller filed a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b), combined with a motion to dismiss for lack of personal jurisdiction over Unicell Body Company, Inc. (D.E. No. 18).

On December 5, 2012, Plaintiff filed a First Amended Complaint ("FAC"). (D.E. No. 20). Plaintiff's Amended Complaint asserts claims against the following Defendants: 1) Lightspeed Environmental, Inc. ("LightSpeed E.I."); 2) Lightspeed Environmental Ltd. ("LightSpeed E.L."); 3) Unicell Body Company, Inc. ("Unicell B.C.I."); 4) Unicell Limited ("Unicell Ltd."); 5) Automotive Support Group, LLC d/b/a ASG Renaissance ("A.S.G."); 6) David Tarrant ("Tarrant"); 7) Roger J. Martin ("Martin"); 8) Kim King ("King"); and 9) Hong Miller ("Miller" or "Hong"[1]). The FAC states that "[t]he claims in this case flow from a concerted conspiracy among Defendants to defraud Mr. Wang into making a $1,000,000 U.S. Dollar investment in LightSpeed, Inc., a worthless shell company registered in Delaware and represented, owned, and/or controlled by Defendants." (FAC at ¶ 19). The FAC contains the following counts:

- "Civil Conspiracy; All Defendants" (Count I);

- "Violation of Sections 10(b) and Rule 10B-5 of the 1934 Securities Exchange Act, 15 U.S.C. § 78j(I), et seq.; All Defendants" (Count II);

- "Violation of Section 20(a) of the 1934 Securities Exchange Act; 15 U.S.C. § 78t(a); Control Person Liability; Defendants Martin, Tarrant and King" (Count III);

- "Violation of Section 12(a)(2) of the Securities Act of 1933, 15 U.S.C.

---

[1]Plaintiff refers to this Defendant by "Hong" in the First Amended Complaint, and thus for efficiency purposes the Court does so too at times.

§771(2); All Defendants" (Count IV);

- "Violation of Section 15 of the Securities Act of 1933, 15 U.S.C. § 77O; Control Person Liability; Defendants Martin, Tarrant and King" (Count V);

- "Violation of Section 17(A) of the Securities Act of 1933, 15 U.S.C. § 77q(A); All Defendants" (Count VI);

- "Fraud; All Defendants" (Count VII);

- "Negligent Misrepresentation; All Defendants" (Count VIII); and

- "Breach of Fiduciary Duty; Defendants Martin, Tarrant and King" (Count IX).

(FAC, D.E. No. 30). Plaintiff made a jury demand.

On January 24, 2013, all Defendants filed a Motion for Security Costs. (D.E. No. 32).

On May 16, 2013, this Court held a hearing on D.E. Nos. 16, 18, and 32.          On May 20, 2013, this Court issued an "Order Granting Limited Discovery Re: Alter-Ego Theory of Personal Jurisdiction." (D.E. No. 40). That order noted that Plaintiff had "requested *limited discovery to address his alter-ego theory of personal jurisdiction with regard to Defendants Unicell Limited and LightSpeed Environmental Ltd.*" (*Id.*) (emphasis added). The order directed the parties to appear for a status conference to discuss discovery regarding Plaintiff's alter-ego theory of personal jurisdiction and ordered Plaintiff to file his proposed written discovery requests and proposed deposition notices.

On May 22, 2013, this Court issued an order requiring supplemental briefs by the parties, ordering them to address several issues. (D.E. No. 41).

On May 27, 2013, Plaintiff filed a Statement regarding his proposed discovery regarding alter-ego personal jurisdiction. (D.E. No. 42).

4

On June 16, 2013, the parties filed a stipulation wherein the November 13, 2012 Motion to Dismiss (D.E. No. 16) was withdrawn as to Defendants LightSpeed E.L and Unicell Ltd. (D.E. No. 45).  That stipulation and order states that LightSpeed E.L.  and Unicell Ltd. consent to personal jurisdiction. It did not address Martin, the individual Canadian Defendant.

On June 26, 2013, a filing titled "Joinder Of Defendants Lightspeed Environmental, Ltd. And Unicell, Ltd. To Defendants Motion To Dismiss For Failure To State A Claim" that states that those two Defendants join in, and adopt by reference, the November 21, 2012 Motion to Dismiss (D.E. No. 18) that had been filed by other Defendants.  (D.E. No. 48).     On July 16, 2013, Plaintiff requested a Clerk's Entry of Default (D.E. No. 49) as to Defendants LightSpeed Environmental, Ltd. and Unicell Ltd.  On that same date, Plaintiff filed a "Motion To Strike Notice Of Joinder And Application For Entry Of Default Judgment."  (D.E. No. 50).  That motion challenges as improper LightSpeed E.L. and Unicell Ltd.'s having joined in a pending motion to dismiss and not having filed an answer.

On July 17, 2013, Defendants LightSpeed E.L. and Unicell Ltd. filed an Answer.  (D.E. No. 51).

On that same date, July 17, 2013, the Clerk's Office issued a "Notice Of Denial Of Request For Clerk's Entry Of Default" (D.E. No. 52) that states that it denied the request for Clerk's Entry of Default due to the notice of joinder, and the answer, that those Defendants had filed.

On July 18, 2013, Plaintiff filed a "Motion To Compel Production Of Limited Discovery" (D.E. No. 53), wherein Plaintiff asks the Court to compel the "corporate defendants" to produce documents responsive to Plaintiff's First Set of Interrogatories and First Request for Production

5

of Documents.

On July 26, 2013, Defendants LightSpeed E.L. and Unicell Ltd. filed a Motion to Dismiss Pursuant To Rule 12(c) for Failure to State a Claim.  (D.E. No. 54).

Accordingly, the following Motions have been fully briefed by the parties and are pending before the Court: 1) the Motion to Dismiss filed by Defendants A.S.G., LightSpeed E.I., Miller, Tarrant, and Unicell B.C.I. (D.E. No. 18); 2) Defendants' Motion for Security of Costs (D.E. No. 32); 3) Plaintiff's Motion to Strike (D.E. No. 50); 4) Plaintiff's Motion to Compel (D.E. No. 53); and 5) a Motion to Dismiss filed by Defendants LightSpeed E.I. and Unicell Ltd. (D.E. No. 54).

The Court previously held a hearing regarding the first and second motions.  The Court has not held a hearing regarding the remaining three motions and it concludes that additional oral argument would not aid the decisional process.

### B.    Allegations In Plaintiff's FAC

Plaintiff's FAC asserts that the "claims in this case flow from a concerted civil conspiracy among Defendants to defraud [him] into making a $1,000,000.00 U.S. Dollar Investment in [LightSpeed E.I.], a worthless shell company registered in Delaware and represented, owned, and/or controlled by Defendants."  (FAC at 19)  Plaintiff's FAC includes the following allegations.

Plaintiff alleges that Martin is a resident of Canada and that he is an: 1) officer and chairman of the board of LightSpeed E.I. and LightSpeed E.L.; 2) officer, president, and chief executive officer and chairman of the board of Unicell B.C.I.; 3) officer and president of Unicell Ltd.; and 4) officer of A.S.G.  (*Id.* at  ¶ 7.)

Tarrant is an: 1) officer and chief executive officer of LightSpeed E.I. and LightSpeed E.L.; and 2) agent of Unicell B.C.I., Unicell Ltd., and A.S.G.   (*Id.* at ¶ 8.)

King is an: 1) officer and general counsel of LightSpeed E.I. and LightSpeed E.L.; and 2) agent of Unicell B.C.I. Unicell Ltd., and A.S.G.   (*Id.* at ¶ 9.)

Defendant Hong Miller is a representative of LightSpeed E. I., LightSpeed E.L., Unicell B.C.I., Unicell Ltd., and A.S.G.  (*Id.* at ¶ 10.).  Hong is "educated and speaks and reads Mandarin Chinese and English."  (*Id.* at ¶ 36).

According to the website of LightSpeed E.I and LightSpeed E.L., those entities are involved in a partnership with Unicell B.C.I. and A.S.G., among other financial partners, to design, develop, and launch Quicksider, the ultimate delivery vehicle built on a zero-emission, entirely electronic platform.  (FAC at ¶ 21).  Unicell Ltd., Unicell B.C.I., Martin, Tarrant, and A.S.G. "collectively own and/or control the controlling majority of the common, voting shares (securities)" of LightSpeed E.I. and LightSpeed E.L.  (*Id.* at ¶ 22)

Plaintiff is a businessman and investor who resides in China.  (FAC at ¶ 27.)  He does not speak, understand, or read the English language.  (*Id.* at ¶ 28.).  In 2011, Plaintiff "was interested in investing in a U.S. entity to achieve certain immigration status in the U.S. through a federal immigration program" and a desire to "make a profitable return on any such equity investment." (FAC at ¶¶ 29 & 30).

Sometime in mid-April 2011, in China, Plaintiff was introduced to Hong and King, who were "persons he did not know," regarding making a possible investment in a U.S. entity. (FAC at ¶¶ 34-35).  At that time, Hong indicated to Plaintiff that Hong "could serve as his business advisor and translator in connection with making [Plaintiff's] possible investment in a U.S. entity

for a fee payable to Hong by [Plaintiff] or possibly by the ultimate investment vehicle." (FAC at ¶ 37). During that same time, King indicated to Plaintiff that he "was a U.S. lawyer with experience in business and immigration matters who could represent [Plaintiff] as his lawyer in connection with [Plaintiff's] possible investment in a U.S. entity for a legal fee payable to King by [Plaintiff] or possibly by the ultimate investment vehicle." (*Id*. at ¶ 38). Plaintiff hired both Hong and King and they agreed to work for him. (*Id*. at ¶3 9).

Hong and King represented to Plaintiff, both orally and through written instruments, that "they had formed a business affiliation to represent [Plaintiff's] interest (and perhaps others) through a business known as 'Global Products Marketing' which purported to specialize in 'Opening Doors' to foreign investment opportunities in U.S. businesses." (FAC at ¶ 40). Hong and King earned Plaintiffs' "trust and confidence as his business advisor/translator and lawyer, respectively, over several months of meetings in China and Michigan." (FAC at ¶ 42).

On May 14, 2011, Hong and King sent an email to Plaintiff urging him to pursue a qualified U.S. EB-5 immigration program investment, rather than an alternate L-1 or other visa option that did not require a significant equity investment. (*Id*. at ¶ 46.)

On July 13, 2011, Plaintiff and his wife traveled to Michigan on the invitation of Hong and King to visit potential investment opportunities. (*Id*. at 8, ¶ 48.) At that time, Wang was introduced by Hong and King to Tarrant on a boat in Michigan. (*Id*. at 8, ¶ 49.)

From July 14, 2011, through July 17, 2011, at a series of meetings in Farmington Hills, Michigan, Defendants Hong, King and Tarrant attempted to convince Plaintiff about the investment potential of LightSpeed E.I., which they promoted as: 1) a viable investment with an estimated pre-money equity value of $30,000,000; 2) having designed and launched Quicksider,

as well as owning all of the legal and intellectual property rights to Quicksider; 3) having a significant global market for Quicksider; 4) in need of additional limited equity investment capital to take Quicksider to the next production phase; and 5) having existing purchase orders for Quicksider.  (*Id.* at ¶¶ 50–55.)  Miller acted as Wang's translator during these meetings.  (*Id.* at 8, ¶¶ 50–55.)

By the end of 2010, LightSpeed E.I's financial statements indicated a net loss of $1,509,659, and by the end of 2011, its financial statements indicated an additional net loss of $1,296,737.00. (*Id.* at  ¶¶ 31–32.)

By March 31, 2011, LightSpeed E.I. had $102,524.42 in cash and its balance sheet indicated total assets of $128,389.59.  (*Id.* at ¶ 33.)  As of June 30, 2011, it had $26,271.02 in cash, and its balance sheet indicated total assets of $52,136.19.  (*Id.* at ¶ 47.)

On July 17, 2011, Miller, King and Tarrant visited Plaintiff at his hotel, while he was still in Michigan, requesting that Wang sign a Memorandum of Understanding to invest in LightSpeed E.I.  When questioned by Plaintiff, Hong, King, and Tarrant represented to Plaintiff "that the Memorandum of Understanding was of no legal effect and was non-binding and, therefore, *did not need to be translated* into Chinese."  (FACT at ¶ 57) (emphasis added).  On that date, Hong, King, and Tarrant urged Plaintiff to "invest $1,000,000.00 U.S. Dollars in the securities of LightSpeed Inc."  (*Id.* at ¶ 58).

As of September 30, 2011, LightSpeed E.I. had $1,143.98 in cash, and its balance sheet indicated total assets of $27,009.15.  (*Id.* at 11, ¶ 64.).

On September 16, 2011, King sent Plaintiff an email advising him that LightSpeed E.I.'s internal efforts to raise equity were coming to an end, and urged him to deposit $200,000 of his

9

$1,000,000 investment in order to preserve a 20% preferential premium.  (*Id*. at 10 ¶ 59.)

Sometime around September 18, 2011, Tarrant, King and Hong traveled to China, to speak with Plaintiff about his potential investment.  (*Id.* at ¶ 60.)   During a series of meetings held on September 18, 2011, through September 22, 2011, Tarrant and King, through Miller's translations, indicated that LightSpeed E.I.'s Board of Directors had delayed their internal equity raising deadline in order to accommodate Plaintiff's potential investment.  (*Id.* at ¶ 61.)  Tarrant, through Hong's translations, stated that if Plaintiff invested immediately, he would "receive a 20% preferential premium in the form of an additional 20,000 shares of LightSpeed [E.I.'s] Series A Preferred stock." (*Id.* at ¶ 62.)  From September 28, 2011, through October 4, 2011, Tarrant and King, through Hong's translations, again urged Plaintiff to expedite his investment by promising him a consultancy role in negotiating with the Tianjin Hi Tech Park for the location of a LightSpeed E.I. factory in China.  (*Id.* at ¶  63.)

On or around September 30, 2011, someone "from Defendants' purported business address in Farmington Hills, Michigan," sent Plaintiff, at his business address in China, some correspondence regarding the Series A Preferred stock, as well as a 2011 Memorandum of Terms, "which described the current valuation of LightSpeed [E.I.] at $29,966,250.00 U.S. Dollars 'pre-money' and which, among other things, offered 120,000 shares of Series A Preferred Stock in LightSpeed [E.I.], in exchange for a $1,000,000.00 U.S. Dollars cash investment, with the transaction being set to close on or about October 1, 2011."  (*Id.* at ¶¶ 65–66.)  Also enclosed in the September 30, 2011, correspondence was a proposed Subscription Agreement between Plaintiff and LightSpeed E.I.  (*Id.* at 11, ¶¶ 65–67.) Plaintiff contends that these documents terminated or held of no further effect or force the Memorandum of

10

Understanding, dated July 17, 2011, between himself and LightSpeed E.I.  (*Id.* at 11, ¶ 68.)

On or around October 4, 2011, Plaintiff asked Hong and King "*to translate and interpret the Subscription Agreement*."  They explained to him "that there was *nothing for [him] to be concerned with* given that (i) the pre-money value of LightSpeed Inc. of approximately $30,000,000.00 U.S. Dollars; (ii) LightSpeed Inc. owned all of the relevant legal rights to Quicksider, including but not limited to all intellectual property rights; (iii) the existence of a significant market in the United States, China and globally for LightSpeed; (iv) LightSpeed Inc. only needed limited additional equity investment(s) to take its enterprise into the next production phase of Quicksider and fulfill LightSpeed Inc.'s existing purchase orders from customers; and(iv) [sic] the 20% preferential premium on his investment referenced above."  (*Id.* at ¶ 69.) (emphasis added).  "King, with Hong's translations, further stated that *Hong and King are [Plaintiff's] 'family'* and that the *Subscription Agreement had been drafted by King as his lawyer and had been fully examined for [Plaintiff's] benefit*."  (*Id.*) (emphasis added).

On or about October 4, 2011, Plaintiff signed the Subscription Agreement. (*Id.* at ¶ 70.) The written Subscription Agreement that Plaintiff signed states that the Subscriber (Plaintiff) makes a series of representations, including that: 1) he "has carefully reviewed" the materials provided to him and "understands such materials and has based his decision to invest in the Company solely on such materials," 2) he "has either along or together with his investment advisors, if any, such knowledge and experience in financial and business matters that he is capable of evaluating the merits and risks of the investment in the Shares" and he "is able to bear the economic risk of losing his entire investment in the Shares"; and 3) he "represents and warrants that, by reason of his business or financial experience or the business or financial

11

experience of his investment advisors who are unaffiliated with and who are not compensated by

the Company, or any of its affiliates, directly or indirectly, he has the capacity to protect his own

interests in connection with the purchase of the Shares." (Ex. 5 to Defs.' Br. at 1-2).   The

Subscription Agreement states that the Subscriber (Plaintiff) "recognizes that the information

furnished by the Company does not constitute investment, accounting, legal or tax advice" and he

"is relying on his own professional advisors, and not on any statements or representations of the

Company or his agents, for such advice and has reviewed the merits of an investment in the

Shares and his tax and legal counsel and with an investment adviser to the extent he has deemed

advisable." (Subscription Agreement at 4).

The Subscription Agreement contained and incorporated an exhibit titled "RISK

FACTORS" that disclosed "risks related to the company's business" including that: "[t]he

Company does not currently own or license the intellectual property necessary for its business,"

and:

> Additional Capital Needs
> The Company will require significant amounts of financing to fund its business
> needs.  The Company does not currently have enough funds to implement its
> business strategy, and unless the Company raises sufficient funds its shareholders'
> investments in the Company will be used to pay the Company's costs and
> expenses (including without limitation salaries). The Company will need to raise
> additional funds in the future . . . Additional funding may not be available on
> favorable terms, or at all . . .

(Ex. At to Subscription Agreement at 1 & 3).

After signing the Subscription Agreement, Plaintiff wired $1,000,000 to LightSpeed

E.I.'s bank account in exchange for 120,000 shares of LightSpeed E.I.'s Series A Preferred stock.

(*Id.* at ¶¶ 71, 83.)

Plaintiff alleges that he "relied upon Hong as his purported trusted business advisor and

12

translator and King as his purported trusted lawyer" in selecting LightSpeed [E.I.] as an investment" and in signing the Subscription Agreement. (FAC at ¶ 73-74). Plaintiff alleges that he "paid monies (approximately $31,000.00) to Hong and King, through a payment made to Global Products Marketing on or about December 9, 2011, for Hong and King's business advisory, translation and legal services provided to [him]." (FAC at ¶ 75).

On or around October 5, 2011, Hong, King, and Tarrant left China and returned to the United States. (*Id.* at 12, ¶ 72.) On or about November 15, 2011, Plaintiff received a Stock Certificate certifying that he is the holder of 120,000 shares of LightSpeed E.I.'s Series A Preferred stock. (*Id.* at 14, ¶ 83.)

Plaintiff asserts that neither Hong, King, nor Tarrant disclosed to him during meetings that occurred between April and October, 20011, that Hong and King "were in reality exclusive agents of" LightSpeed E.I. working at the direction of LightSpeed E.I., LightSpeed E.L., the Unicell Defendants, A.S.G., Martin and Tarrant. (FAC at ¶ 76). He also alleges that they did not disclose to him, during that same time period, that: 1) LightSpeed E.I. did not own or control the legal or intellectual property rights to Quicksider; 2) LightSpeed E.I. had "no pre-money equity value, and was desperately running out of cash;" and 3) had no purchase orders from customers. (*Id.* at ¶¶ 76–78.).

Plaintiff alleges that he "relied completely on Hong and King for translation and for business and legal advice" with respect to his "understanding of the written and verbal information provided by Hong, King and Tarrant regarding" LightSpeed E.I. and he "was not in a position to understand or evaluate the information independently in light of the language and cultural barriers known to Defendants." (*Id.* at ¶ 79.).

13

Between November 30, 2011, and December 2, 2011, Plaintiff traveled to Toronto, Canada, and attended various meetings with Martin, Tarrant, King, and Hong regarding his investment in LightSpeed E.I. (*Id.* at ¶ 84.) He alleges that, at those meetings, Defendants Martin and Tarrant, through Hong's translations, reaffirmed: 1) the viability of LightSpeed E.I. as a business investment with an estimated pre-money equity value of approximately $30,000,000; 2) that LightSpeed E.I. designed and developed Quicksider and owned all the legal and intellectual property rights to it; and 3) that a significant global market existed for Quicksider. (*Id.* at ¶¶ 86–88.) He alleges that King was also present during these meetings. (*Id.* at ¶ 86.)

Plaintiff alleges that, during these meetings, neither Martin, Tarrant, Miller nor King disclosed that: 1) Hong and King were, in reality, agents of LightSpeed E.I. "working at the direction of and in concert with" LightSpeed LightSpeed E.I., LightSpeed E.L., the Unicell Defendants, A.S.G., Martin and Tarrant; 2) LightSpeed E.I. did not design or develop Quicksider and did not own or control the legal or intellectual property rights to Quicksider; 3) LightSpeed E.I. had no pre-money equity value and that Plaintiff was the first and only substantial "real money"; and (4) LightSpeed E.I. had no purchase orders from customers. (*Id.* at ¶¶ 89–91.)

On or around December 1, 2011, Plaintiff signed a Registration Rights Agreement, presented to him in English. (*Id.* at ¶¶ 92–94.) Plaintiff contends that King, through Hong's translations, explained that the agreement was "drafted by King, and there were several strict provisions, requiring his signature. King further stated that King's father, who is himself an attorney, had reviewed the document and 'there will be no problem.'" (*Id.* at ¶ 93.)

14

As of December 31, 2011, Plaintiff alleges that LightSpeed E.I. had $225,829.23 in cash, and its balance sheet indicated total assets of $256,029.23.  (FAC at ¶ 133.) As of March 31, 2012, He alleges that LightSpeed E.I. had $35,100.27 in cash, and its balance sheet indicated total assets of $37,300.27.  (*Id.* at ¶ 134.)

On April 4, 2012, Plaintiff traveled to Buffalo, New York, to meet Martin and to serve as host for a second potential LightSpeed E.I. investor, "Mr. Zhu."  (*Id.* at ¶ 96.)

On April 4, 2012, and April 5, 2012, Plaintiff, Martin and Zhu visited a manufacturing facility in Buffalo, New York, a "facility now known by [Plaintiff] to be operated by Unicell and/or Unicell B.C., and it was false and misleading for Martin to represent" that LightSpeed E.I. "was manufacturing anything at" that facility.  (*Id.* at ¶ 97).   On those same dates, Plaintiff and Zhu also had dinner with Martin in New York "and visited Toronto, Canada" to discuss LightSpeed E.I.'s  prospects.  (*Id.*).

 From April 6, 2012, through April 7, 2012, Martin, Tarrant, Plaintiff, and Zhu and others, had a series of meetings in Detroit and Farmington Hills, Michigan, to discuss LightSpeed E.I.'s business prospects.  (*Id.* at ¶¶ 98–100.)   Plaintiff alleges that during these meetings between April 4, 2012, and April 7, 2012, Martin, through Hong's translations, reaffirmed:  1) the viability of LightSpeed E.I., as a business investment with an estimated pre-money equity value of approximately $30,000,000; (2) LightSpeed E.I. designed and developed Quicksider and owned all the legal and intellectual property rights to Quicksider; and 3) that a significant global market existed for Quicksider.   (*Id.* at ¶¶ 97–102.)

At no time during these meetings in April of 2012 did any of the Defendants disclose

that: 1) Hong and King were, in reality, agents of LightSpeed E.I. "working at the direction of or in concert with" LightSpeed E.I., LightSpeed Ltd., Unicell Ltd., Unicell B.C.I., A.S.G., Martin and Tarrant; 2) LightSpeed E.I. never designed or developed Quicksider and did not own or control the legal or intellectual property rights to Quicksider; 3) LightSpeed E.I. had no pre-money equity value and that Plaintiff's investment was " the first and only substantial 'real money in' relative to" LightSpeed E.I.; and 4) LightSpeed E.I. had no purchase orders from customers. (*Id.* at ¶¶ 103–05.)

Following these meetings, Zhu asked for documents and other information that would support Martin's assertions about the viability of a LightSpeed E.I. investment. (*Id.* at ¶ 106.) Plaintiff alleges that, when it later became apparent that LightSpeed E.I. was slow at providing that information to Zhu, Plaintiff became suspicious about the actual viability of LightSpeed E.I. (*Id.* at ¶ 107.)

On August 8, 2012, Martin met with Plaintiff in Detroit, Michigan. (*Id.* at ¶¶ 111–12.) Plaintiff also brought his "translator" to the meeting. (*Id.* at ¶¶ 112–13.) At that meeting, Martin reaffirmed the prior representations that had been made about LightSpeed E.I. and did not disclose the entities that Hong and King were working for. (*Id.* at 20–21, ¶¶ 115–20.)

On August 20, 2012, Martin wrote a letter to Plaintiff, acknowledging having met with him in Detroit on August 8, 2012, and stating "[t]he first point I want to make to you is that we are grateful for your substantial investment in LightSpeed and acknowledge that your investment places on us a serious obligation to do our best to make that investment pay off for you, both in terms of a financial return and as a means for your to obtain your green card." (*Id.* at ¶¶ 121–126). That letter also stated that certain conditions precedent must take place for

16

LightSpeed E.I. "to become established as an active business." (*Id.*). Plaintiff alleges that letter contradicted the "post-investment representations that Martin" had made to him and contradicted the "pre-investment representations that Tarrant, Hong and King" had made to him. (FAC at ¶ 126).

The Class A Preferred Stock in LightSpeed E.I. that Plaintiff purchased is non-voting and non-controlling. (FAC at ¶ 127). As of the date the FAC was filed, Plaintiff was the "only significant equity investor or person with any substantial 'skin in the game'" relative to LightSpeed E.I. (*Id.* at ¶ 128). Unicell Ltd., Unicell B.C.I., Tarrant and A.S.G. "collectively own and control the controlling majority of the common, voting shares" of LightSpeed E.I. (*Id.* at ¶ 129).

Plaintiff alleges that, in contradiction to the representations that had been made to him, LightSpeed E.I. "is in reality an entity without equity value, without a product, without intellectual property, without employees and without assets of any significant value." (FAC at ¶ 130). He further alleges that LightSpeed E.I. "has a negative net worth and Defendants have enriched themselves with the proceeds of [Plaintiff's] investment" in LightSpeed E.I. by charging it "fees and other amounts to gain access to both the intellectual property rights to Quicksider and the employees of the Unicell Defendants and A.S.G. with "the alleged know-how as to how Quicksider could actually someday be developed." (*Id.* at ¶ 130-31). Plaintiff alleges that "[i]n furtherance of Defendants' collective conspiracy," LightSpeed E.I. "is a worthless shell company owned and controlled by Defendants who have since the date of [Plaintiff's] investment siphoned off the cash. (*Id.* at ¶ 132).

17

## ANALYSIS

**I.    The Court Shall Deny Plaintiff's Motion To Compel Limited Discovery (D.E. No. 53)**

On July 18, 2013, Plaintiff filed a motion asking this Court to compel all of the corporate defendants to produce documents responsive to interrogatories and requests for production of documents that Plaintiff has sent out.  In that motion, Plaintiff asserts that contrary to this Court's order allowing discovery, the corporate Defendants have not provided the requested discovery.

In response to this motion, Defendants contend that Plaintiff is not entitled to the discovery he wants *at this time* because: 1) the limited discovery to address Plaintiff's alter-ego theory of personal jurisdiction was rendered moot by the corporate Canadian Defendants withdrawing their motion challenging personal jurisdiction; and 2) the PSLRA stays all further discovery until the pending motion to dismiss is resolved by the Court.  The corporate Canadian Defendants state that they decided to stipulate to personal jurisdiction over them because they decided the burden and cost of responding to the personal-jurisdiction discovery requests (and then continuing to brief and argue the motion to dismiss) was not worth it.  Their counsel advised that they would not be responding to the discovery requests because the limited discovery order was now moot.

In his Reply Brief, Plaintiff asserts that this Court's Order allowing limited discovery "was not intended to be interpreted on a per-party basis.  Even though it expressly referenced LightSpeed Canada and Unicell Canada, counsel understood from the motion hearing that the Court intended to authorize discovery on the ***issue*** of Mr. Wang's alter-ego allegations."  (Reply Br. at 4) (emphasis in original).

18

The Court shall DENY this motion.  As Defendants note, the Private Securities Litigation Reform Act of 1995 ("the PSLRA") was designed to deter frivolous securities litigation and provides for an automatic stay of discovery pending the resolution of a motion to dismiss.  15 U.S.C. § 78u-4(b)(3)(B) ("In any private action arising under this chapter . . . all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.").[2]  Thus, the general rule is that discovery is stayed until all motions to dismiss have been resolved.

This Court did issue an order allowing Plaintiff to take limited discovery as to his then-contested position that this Court may exercise personal jurisdiction over the corporate Canadian Defendants on an alter-ego theory of personal jurisdiction.  But the need for that limited discovery became moot when those two Defendants dropped their personal jurisdiction challenge and consented to personal jurisdiction in this Court.

## II.      The Court Shall Deny Plaintiff's "Motion To Strike Notice Of Joinder And Application For Entry Of Default And Default Judgment" (D.E. No. 50)

Once again, a recap of the relevant procedural history is helpful to understanding this motion:

• As their first responsive pleading, on November 13, 2012, the Canadian Defendants filed a motion to dismiss challenging personal jurisdiction against them.

• As their first responsive pleading, the remaining Defendants (the "American Defendants") filed a separate Motion to Dismiss on November 21, 2012, and that motion contains multiple challenges under Fed. R. Civ. P. 12(b)(6).

---

[2]And the automatic stay has been held to apply to both initial and successive motions to dismiss.  *Gardner v. Major Auto. Companies,* 2012 WL 1230135 at * 3 (E.D. N.Y. 2012).

19

•    On June 13, 2013, the corporate Canadian Defendants withdrew their Motion to Dismiss challenging personal jurisdiction against them. Soon after that, on June 27, 2013, those two Defendants filed a "Joinder Of Defendants Lightspeed Environmental, Ltd. And Unicell, Ltd. To Defendants Motion To Dismiss For Failure To State A Claim" (D.E. No. 48) that stated that they "hereby join in Defendants' Motion to Dismiss for Failure to State a Claim (Dkt. no. 18) and adopt, by reference, such motions, briefs, and memoranda of law in support thereof."

•    On July 16, 2013, Plaintiff requested a Clerk's Entry of Default (D.E. No. 49) as to the corporate Canadian Defendants. On that same date, Plaintiff filed a "Motion To Strike Notice Of Joinder And Application For Entry Of Default Judgment." (D.E. No. 50). That motion challenges as improper LightSpeed E.L. and Unicell Ltd.'s having joined in a pending motion to dismiss and not having filed an answer.

•    On July 17, 2013, the corporate Canadian Defendants filed an Answer. (D.E. No. 51). On that same date, July 17, 2013, the Clerk's Office issued a "Notice Of Denial Of Request For Clerk's Entry Of Default" (D.E. No. 52) that states that it denied the request for Clerk's Entry of Default due to the notice of joinder, and the answer, that those Defendants had filed.

•    On July 26, 2013, the corporate Canadian Defendants filed a Motion to Dismiss Pursuant To Rule 12(c) for Failure to State a Claim. (D.E. No. 54). That motion is very similar to the pending 12(b)(6) motion that the American Defendants had filed.

Against that procedural backdrop, the Court must consider Plaintiff's motion that asks this Court to: 1) strike the corporate Defendants' Notice of Joinder; and 2) enter a default judgment against the corporate Canadian Defendants.

### A. The Court Shall Deny As Moot Plaintiff's Motion To Strike Notice Of Joinder

In his Motion to Strike, Plaintiff asks the Court to strike the Notice of Joinder filed by the corporate Canadian Defendants (which said they wished to join the prior Motion to Dismiss filed by the American Defendants). Plaintiff asserts that it was improper for these two Defendants to join that motion because, having first filed a motion to dismiss based on personal jurisdiction, these Defendants cannot file another pre-answer motion to dismiss under Rule 12. Plaintiff's

20

motion states that a defendant waives some defenses that he omits from his pre-answer motion, but acknowledges that omitted defenses that are not waived can be raised in a post-answer motion for judgment on the pleadings. (Pl.'s Br. at 5). Plaintiff accuses the corporate Canadian Defendants of bringing a second pre-answer motion to dismiss for purposes of delay.

In response, the corporate Canadian Defendants assert, quite persuasively, that they were actually trying to streamline this case. They state that rather than submit a second (and largely duplicitous) motion for the Court's determination, they sought to join the motion to dismiss that was already pending. They assert that Plaintiff is not prejudiced by their joinder to the already pending Motion to Dismiss filed by the American Defendants "because the Court must still issue a decision on the pending 12(b)(6) motion, and the same arguments remain available to the Canadian Defendants through a 12(c) motion" for judgment on the pleadings. (Defs. Br. at 5).

Due to the arguments made by Plaintiff, the corporate Canadian Defendants went ahead and filed an Answer on July 17, 2013, and then filed their own Motion for Judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) on July 26, 2013.

Given those actions, the Court shall DENY AS MOOT Plaintiff's motion to strike the corporate Canadian Defendants' Notice of Joinder. The Court shall then consider the merits of the challenges raised in their 12(c) motion, along with the already pending Motion to Dismiss.

**B.    The Court Shall Deny Plaintiff's Request For A Default Judgment**

In this motion, Plaintiff also asks the Court to enter a default judgment in his favor and against the corporate Canadian Defendants. This request shall be DENIED.

As explained in *Etherly v. Rehabitat Sys. of Michigan*, 2013 WL 3946079 (E.D. Mich. 2013):

21

> Under Fed.R.Civ.P. 55(b), a judgment by default may be entered against a
> defendant who has failed to plead or otherwise defend against an action. In order
> to obtain judgment by default, the proponent must first request the clerk's entry of
> default pursuant to Rule 55(a). *Hanner v. City of Dearborn Heights*, No.
> 07–15251, 2008 WL 2744860, at *1 (E.D.Mich. July 14, 2008); *see also Hickman
> v. Burchett*, No. 07–743, 2008 WL 926609, at *1 (S.D.Ohio Apr. 4, 2008)
> ("[E]ntry of default under Rule 55(a) must precede grant of a default judgment
> under Rule 55(b)." (internal quotation marks omitted, collecting cases)). Once a
> default has been entered by the clerk's office, all of the plaintiff's well-pleaded
> allegations are deemed admitted. *Cross,* 441 F.Supp.2d at 846 (*citing
> Visioneering Constr. v. U.S. Fidelity and Guar.,* 661 F.2d 119, 124 (6th
> Cir.1981)); *see also* Fed.R.Civ.P. 8(b)(6) (providing that "[a]n allegation—other
> than one relating to the amount of damages—is admitted if a responsive pleading
> is required and the allegation is not denied."). Once a default is obtained, the
> proponent may file for default judgment by the clerk or by the court. Fed R. Civ.
> P. 55(b).

*Id.* at * 3 (bolding added for emphasis).

Here, Plaintiff requested a Clerk's Entry of Default on July 16, 2013.  On that same date –

without having obtained a Clerk's Entry of Default –  Plaintiff filed the instant motion wherein

he requests the entry of a default judgment against the corporate Canadian Defendants.  Thus, it

was "procedurally improper for Plaintiff to move for entry of default judgment without first

obtaining an entry of default from the clerk."  *Devlin v. Kalm*, 493 Fed. App'x. 678, 685 (6th Cir.

2012).  Moreover, the Clerk of the Court later denied Plaintiff's request for a Clerk's Entry of

Default.

Plaintiff's request for a default judgment under these circumstances shall be denied.

*Devlin; see also Shepard Claims Serv., Inc. V. William Darrah & Assocs*., 796 F.2d 190, 193

(6th Cir. 1986) ("entry of default is just the first procedural step on the road to obtaining a default

judgment"); *Walton v. Rogers*, 1988 WL 109859 (6th Cir. 1988) ("Default judgments are

disfavored, and there must be strict compliance with the legal prerequisites establishing the

court's power to render the judgment.").  Moreover, even if this Court has the discretion to short-circuit this two-step procedure, it declines to do so under the facts presented here.

### III.   Substantive Challenges In Motions To Dismiss (D.E. Nos 18 & 54)

Two motions that raise various substantive challenges to Plaintiff's claims are pending before the Court: 1) a Motion to Dismiss filed by Defendants LightSpeed E.I., A.S.G., Tarrant, King, Hong, and Unicell B.C.I. (the "American Defendants") on November 21, 2012 (D.E. No. 18); and 2) a Motion to Dismiss, brought pursuant to Fed. R. Civ. P. 12(c), brought by the corporate Canadian Defendants (D.E. No. 54).  Although filed at separate times and under different subsections of Rule 12, many of the substantive arguments contained in these motions are the same and so the Court will address them collectively.

The American Defendants brought their Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff and accept all the well-pleaded factual allegations as true.  *Evans-Marshall v. Board of Educ.*, 428 F.3d 223**,** 228 (6th Cir. 2005).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1948 (2009).  Although a heightened fact pleading of specifics is not required, the plaintiff must bring forth "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   That is, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant[s are] liable for the misconduct alleged."  *Ashcroft*, 556 U.S. at 678.

23

When a court is presented with a Rule 12(b)(6) motion, it may consider exhibits attached to a defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims therein. *Devlin v. Kalm*, __Fed. App'x __, 2013 WL 4265757 (6th Cir. 2013).

The corporate Canadian Defendants brought their motion pursuant to Fed. R. Civ. P. 12(c). Motion for judgment on the pleading pursuant to Fed. R. Civ. P. 12(c) are analyzed under the same standard as motions to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6). *Wee Care Child Ctr., Inc. v. Lumpkin*, 680 F.3d 841, (6th Cir. 2012).

> **1.    The Court Shall Dismiss Plaintiff's Section 12(a)(2) Claims Because He Does Not Allege That This Was A Public Offering, That A Prospectus Existed, Or That There Were Any Oral Communications Regarding A Prospectus.**

Count IV of Plaintiff's FAC asserts a claim against all Defendants for a violation of Section 12(a)(2) of the Securities Act of 1933, 15 U.S.C. §77l(2). Both of the Motions to Dismiss seek to dismiss that count on the same basis – that the claim fails because Plaintiff has not alleged that this was a public offering.

Under Section 12(a)(2) of the Securities Act, 15 U.S.C. §77l(a)(2), any person who "'offers or sells a security . . . by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact' may be liable to an unknowing purchaser." *Wright v. National Warranty Co.*, 953 F.2d 256, 262 (6th Cir. 1992) (quoting the Act).

In *Gustafson*, the Supreme Court ruled that, for purposes of the Securities Act of 1933, "the word 'prospectus' is a term of art referring to a document that describes a public offering of securities by an issuer or controlling shareholder. *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561,

24

584 (1995) (bolding added for emphasis).  And the "oral communication" used above means "oral communications that relate to a prospectus."  *Id*. at 567-68.  Thus, Section 12(a)(2) "encompasses a narrow category of transactions – public offerings of securities via a written prospectus."  *Waltree Ltd. v. Ing Furman Selz, LLC*, 97 F.Supp.2d 464, 469 (S.D. N.Y. 2000).

In response to the pending motions, Plaintiff does not dispute that a Section 12(a)(2) claim can only be based upon a public (rather than private) offering, but asserts that whether the offering was private or public is a factual question.

The plaintiff in *Waltree* made that same argument, without success, because his complaint lacked sufficient allegations.  *Waltree*, 97 F.Supp.2d at 469-70.  In that case, the plaintiff's complaint contained an allegation that the notes at issue were sold pursuant to a "public offering" but contained no factual allegations which would support that bare and conclusory allegation.  In addition, the complaint did not allege the existence of a prospectus or include any factual allegations regarding oral communications relating to a prospectus.  The district court concluded that, absent such allegations, the plaintiff could not maintain a claim under Section 12(a)(2).  In rejecting the plaintiff's assertion that this was a factual dispute that should be addressed later, the district court explained:

> Plaintiff argues that the public nature of the challenged transactions is an issue of fact to be determined at a later stage in the proceedings.  *See* Pl. Opp. at 22-24. Although this may be true where a plaintiff has alleged the existence of a prospectus, plaintiff here has failed to satisfy even that threshold requirement.

*Id*. at n.8.

Here, Plaintiff's FAC: 1) does not allege that he purchased securities from Defendants pursuant to a "public offering"; 2) does not contain any allegations regarding the existence of a

prospectus; and 3) does not contain any allegations regarding any oral communications relating to a prospectus. Accordingly, the Court rules that Plaintiff cannot maintain a claim under Section 12(a)(2). *Waltree, supra; see also Dietrich v. Bauer*, 76 F.Supp.2d 312, 330-31 (S.D. N.Y. 1999).[3]

### a. The Court Shall Also Dismiss Count V.

Count V asserts a control person liability claim against Martin, Tarrant, and King, under Section 15 of the Securities Act of 1933, "for the violations of §12(a)(2) of the Securities Act of 1933" that are alleged in Count IV. Given that the Court is dismissing Plaintiff's Section 12(a)(2) claims that are asserted in Count IV, it shall also dismiss Count V because Section 15 "grounds liability of control persons on the corporation being found liable" under Section 12(a)(2). *J&R Mktg., SEP v. General Motors Corp.*, 549 F.3d 384, 398 (6th Cir. 2008).

### 2. Do Plaintiff's Claims Under 10(b) and 17(a) Fail As A Matter Of Law?

Count II of Plaintiff's FAC asserts a claim for "Violation of Section 10(b) and Rule 10B-5 of the 1934 Securities Exchange Act, 15 U.S.C. § 78(j)(I) et seq." against all Defendants. Count VI asserts a claim for "Violation of Section 17(A)" of the Act against all Defendants. Defendants seek dismissal of both counts and these same challenges are brought in both motions.

The parties agree that in order to state a claim under Section 10(b) of the Securities Exchange Act, or under SEC Rule 10b-5, a plaintiff must allege: 1) misrepresentation or omission; 2) of a material fact that the defendant had a duty to disclose; 3) made with scienter; 4)

---

[3]Given this ruling, the Court declines to address an alternative challenge that relates to this Count that was raised for the first time in a footnote in the American Defendants' Reply Brief (i.e., that Plaintiff cannot pursue this claim because he has not tendered his interest back to the Company). (*See* D.E. No. 31 at 3 n.2).

justifiably relief on by the plaintiff; that 5) proximately caused him injury. (D.E. No. 18 at 11; D.E. No. 30 at 8); *see also City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 668 (6th Cir. 2005).

Defendants also contend, and Plaintiff has not disputed, that Plaintiff must plead and prove the same factors to allege liability under Section 17(a). (D.E. No. 18 at 11; D.E. No. 30 at 15); *see also S.E.C. v. George*, 426 F.3d 786,791-92 (6th Cir. 2005).

Before addressing those grounds, it is important to note that the PSLRA "imposes more exacting pleading requirements" than Fed. R. Civ. P. 8(a) or 9(b). *Ricker v. Zoo Entm't., Inc.*, __ Fed. App'x. __, 2013 WL 4516095 6th Cir. Aug. 27, 2013). "As one scholar notes, the PSLRA 'created a super-heightened pleading standard for certain aspects of securities claims and deferred discovery until after resolution of an inevitably protracted motion to dismiss . . .' Arthur Miller, *From Conley to Twombly to Iqbal: A Double Play on the Federal Rules of Civil Procedure*, 60 Duke L. J. 1, 11 (2010). Such motions to dismiss, as is the case here," often include challenges to scienter and reliance*. Indiana State Dist. Council of Laborers & HOD Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 719 F.3d 498, 510-11 (6th Cir. 2013).

Defendants contend Plaintiff's claims are deficient in three respects, which are addressed below.

### a.   Does The Complaint Sufficiently Allege A Specific Misrepresentation?

First, Defendants assert that the FAC does not sufficiently allege a specific misrepresentation. Defendants assert that Plaintiff makes only general allegations about the Defendants' alleged scheme to defraud him without specifically stating each Defendant's role.

In response, Plaintiff contends that the FAC includes specific misrepresentations and omissions.  In connection with the pending motions, Plaintiff has submitted several charts wherein he specifies where in the FAC he specifies the alleged fraudulent statements, the speaker, when and where the statements were allegedly made, and why they were fraudulent.

Federal Rule 9(b) requires the pleading to "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b).  A  pleading must  "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent . . . . A statement is said to be 'actionable' when . . . it is a misrepresentation or omission of a material fact that the defendant had a duty to disclose." *Louisiana School Employees' Retirement System v. Ernst & Young, LLP*, 622 F.3d 471, 478 (6th Cir. 2010).

In addition, "[u]nder the PSLRA heightened pleading requirements, any private securities complaint alleging that the defendant made a false or misleading statement must" specify "each statement alleged to have been misleading, the reason or reasons why the statements is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  *Id*. at 478 (citing 15 U.S.C. § 78u–4(b)(1), (2)).

The statements the pleading alleges to be fraudulent must "pertain to material information that the defendant had a duty to disclose." *Ashland* Inc. *v. Oppenheimer & Co., Inc.*, 648 F.3d 461, 468 (6th Cir. 2011). A fact is material if there is a substantial likelihood that a reasonable investor would consider it important in making an investment decision.  *See Steen v. Commodity Futures Trading Comm'n*, 1993 WL 54391, at * 6, 986 F.2d 1422  (6th Cir. 1993); *In re Sofamor*

28

*Danek Group, Inc.*, 123 F.3d 394, 400 (6th. Cir. 2007) (holding that material information is any information "a reasonable investor would have viewed the misrepresentation or omission as having significantly altered the total mix of information made available." ).

The Court concludes that Plaintiff has satisfied the heightened pleading requirement with regard to the first element. As reflected in the charts submitted by Plaintiff's Counsel, the FAC specifies the fraudulent statements, the speaker, when and where the fraudulent statements were allegedly made, and explains why the statements were fraudulent.

> **b.    Does The Complaint Lack Allegations Showing A Strong Inference Of Scienter?**

Second, Defendants assert that the FAC lacks allegations showing a strong inference of scienter.

As to this element, Plaintiff must "with respect to each act or omission alleged" "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Ashland, Inc.*, 648 F.3d at 469. "To qualify as 'strong'" "an inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). In examining scienter, the court "must decide whether all of the facts alleged, *taken collectively*, meet the PSLRA's requirements." *Ashland, Inc.*, 648 F.3d at 469 (emphasis in original). In other words, the Court is not to scrutinize each allegation in isolation but to assess all the allegations holistically. *Id.*

Defendants contend that Plaintiff's First Amended Complaint is deficient because it does not specify the roles that each Defendant supposedly played in the alleged misrepresentations and

conspiracy.

In his Response Brief, Plaintiff addresses – on a defendant-by-defendant basis – how he has alleged scienter.  (*See* D.E. No. 30 at 11-15).

The Court agrees with Plaintiff that, taken collectively, the facts alleged in the FAC meet the PSLRA's requirements.

### c.     Does Plaintiff Allege Justifiable Reliance?

Third, Defendants assert that Plaintiff has not alleged justifiable reliance.  Defendants contend that Plaintiff's allegation that he was misled as to the true facts surrounding LightSpeed E.I. is contradicted by the written agreements that Plaintiff signed.  They contend that Plaintiff cannot establish justifiable reliance on the alleged misrepresentations that were made to him in light of those documents.  For example, Plaintiff alleges that Defendants misrepresented to him that LightSpeed E.I. owned the intellectual property rights to Quicksider but the written Subscription Agreement that Plaintiff signed expressly stated that "[t]he Company does not currently own or license the intellectual property necessary for its business."  Defendants contend that where, "as here, an investor is 'given abundant warning that their investment was speculative and risky' and the offering materials clearly 'bespeak caution' the courts are not inclined to impose liability for an alleged misrepresentation."  (Defs.' Br. at 15) (quoting *Harner v. Prudential Sec. Inc.*, 785 F.Supp. 626, 641 (E.D. Mich. 1992)).

In response, Plaintiff asserts that "Defendants' reliance on the bespeaks-caution doctrine is misplaced, as their argument relies entirely upon the Subscription Agreement and the risk disclaimers" in it and "rests on the flawed" premise that Plaintiff can read English.  (Pl.'s Br. at 9).  Plaintiff notes that he has alleged that he cannot read or understand English and that fact

30

must be accepted as true for purposes of this motion.  Plaintiff then goes through the facts that he

has alleged and contends that his reliance was justifiable.

In their Reply, Defendants assert that Plaintiff "does not and cannot dispute that the

documents he signed disclose the information he alleged was fraudulently omitted from him" and

assert that, "[s]ignificantly, he does not allege that either Ms. Miller or Ms. King actually read the

documents to him or that the documents were translated for him.  Neither does he allege any fact

that suggests a reasonable attempt to read or understand the Subscription Agreement – especially

when he had the resources and opportunity to do so. . . His failure to read or have read to him his

certifications and the disclosures made to him in the documents bars his claims."  (Defs.' Reply

Br. at 2).

The parties make the same arguments in the second Motion to Dismiss (the one filed by

the corporate Canadian Defendants) as to this same ground.  In their Reply, they argue that

Plaintiff "did not allege that he read or made any attempt to understand the documents that he

signed."  (D.E. No. 60 at 7).

The Court concludes that Plaintiff has sufficiently alleged justifiable reliance.  Even the

cases that Defendants direct the Court to note that while the general rule is that a party is bound

by documents that he signs, there is an exception for fraud.  *See, e.g., Aluia v. Harrison Comm.*

*Hosp.*, 139 Mich.App. 742, 787 (1985); *Paper Express Limited v. Pfankuch Maschinen*, 972 F.2d

753, 757 (7th Cir. 1992).  In *Aluia,* the court explained:

> We are aware of the significant authority which states that a party's lack of
> understanding of the language and contents of a contract which is voluntarily
> executed is not, *in the absence of fraud*, grounds for avoiding it.  17 C.J.S.,
> Contracts, § 139, p. 885.  It is well-settled that where a person cannot read the
> language in which a contract is written, it is ordinarily as much his duty to procure

31

someone to read it to him as it would be to read the agreement before signing
were he able to do so. Failure of a party to obtain a reading and explanation
is ordinarily negligence which will estop the party from avoiding the contract on the
ground that the party was ignorant of the contract's provisions.

*Aluia*, 139 Mich.App. at 749 (emphasis added).

In *Paper Express*, the Seventh Circuit stated that "it is a fundamental principle of contract

law that a person who signs a contract is presumed to know its terms and consents to be bound by

them" and that "mere ignorance will not relieve a party of her obligations and she will be bound

by the terms of the agreement." *Paper Express, supra,* at 757.  The court noted that "[w]e live in

a global economy and contracts between parties of different nationalities, and speaking different

languages, are common place.  But a party who agrees to terms in a writing without

understanding or investigating those terms does so at his own peril."  *Id*.  The Court noted that

although the rules in the contract at issue were in German, the plaintiff could have used a

"German-English dictionary" or "even better, *a translator*" to understand the contract. *Id*.

(emphasis added).

Here, Plaintiff's FAC alleges that on or around October 4, 2011, Plaintiff asked Hong and

King "*to translate and interpret the Subscription Agreement*."  They explained to him "that there

was *nothing for [him] to be concerned with* given that (i) the pre-money value of LightSpeed Inc.

of approximately $30,000,000.00 U.S. Dollars; (ii) LightSpeed Inc. owned all of the relevant

legal rights to Quicksider, including but not limited to all intellectual property rights; (iii) the

existence of a significant market in the United States, China and globally for LightSpeed; (iv)

LightSpeed Inc. only needed limited additional equity investment(s) to take its enterprise into the

next production phase of Quicksider and fulfill LightSpeed Inc.'s existing purchase orders from

32

customers; and(iv) [sic] the 20% preferential premium on his investment referenced above." (*Id.* at ¶ 69.) (emphasis added). "King, with Hong's translations, further stated that *Hong and King are [Plaintiff's] 'family'* and that the *Subscription Agreement had been drafted by King as his lawyer and had been fully examined for [Plaintiff's] benefit*." (*Id.*) (emphasis added). Thus, Plaintiff alleges that: 1) he hired Hong as his translator and King as his attorney; 2) when he asked them to translate the Subscription Agreement they misrepresented its contents; and 3) the person he hired as his attorney represented that he had not only examined the contract on his behalf, but actually drafted it for Plaintiff's benefit.

Given those allegations, the Court concludes that Plaintiff has sufficiently alleged justifiable reliance. *Aluia, supra; Paper Express, supra; see also Leasing Service Corp. v. Graham*, 646 F.Supp. 1410, 1415 (S.D. N.Y. 1986) (Plaintiff, "a businessman acting in a commercial context, is held to have understood the consequences of his having signed the [contracts] . . . If [plaintiff] did not read them *or hire counsel to do so*, he is the victim of his own lack of diligence.") (emphasis added); *Dombrowski v City of Omer*, 199 Mich.App. 705, 710 (1993) (Discussing "the principle that one who signs a contract cannot seek to invalidate it on the basis that he or she did not read it or thought that its terms were different, *absent a showing of fraud* or mutual mistake: and that "[f]ailure to read a contract document provides a ground for rescission only where the *failure was not induced by some stratagem, trick, or artifice* by the parties seeking to enforce the contract.") (emphasis added).

Accordingly, the Court shall allow Plaintiff's 10(b) and 17(a) claims to proceed.

### d.    The Court Shall Not Dismiss Count III.

In Count III, Plaintiff alleges control person liability against Martin, King, and Tarrant,

33

under Section 20(a) of the Securities Exchange Act, "for violations of Section 10(b) and Rule 10b-5" of the Act.

In their motions, Defendants contend that the Court should dismiss Count III because he has failed to sufficiently plead a primary securities violation.

Given the Court's ruling allowing Plaintiff's 10(b) and 17(a) claims to proceed, the Court shall also deny Defendants' request to dismiss Count III.

### 3.   Has Plaintiff Stated A Claim For Common Law Fraud?

Next, Defendants assert Plaintiff fails to sufficiently state a claim for fraud under Michigan law for the same reasons that his fraud-based security claims should be dismissed. As discussed above, however, the Court rules that he has sufficiently alleged such claims. As such, the Court shall also deny this ground for relief.

### 4.   Has Plaintiff Stated A Claim For Negligent Misrepresentation?

Defendants challenge Plaintiff's negligent misrepresentation claim, under Michigan law, on two grounds.

First, they assert that "[t]he only defendant in privity of contract with Mr. Wang was LightSpeed; thus, Mr. Wang does not have a claim of negligent misrepresentation against the other defendants and it should be dismissed." (D.E. No. 18 at 17). In response, Plaintiff directs the Court to *Molecular Tech. Corp. v. Valentine*, 925 F.2d 910, 919 (6th Cir. 1991) ("[T]he defendants have completely misconstrued the state of negligent misrepresentation law in Michigan. The tort of negligent misrepresentation in Michigan imposes a duty in favor of all those third parties who defendant knows and should reasonably foresee will rely on the information in question. *Polgar,* 391 Mich. at 9-10, 215 N.W.2d at 152-53. There is absolutely

34

no fiduciary or privity requirement in order to establish the element of duty under this claim."); *see also Cleveland Indians Baseball Co., L.P. v. New Hampshire Ins. Co.*, 737 F.3d 633, 638 (6th Cir. Aug. 23, 2013).

Second, they assert that, as argued above, he has not alleged justifiable reliance, given the nature of the documents he signed. This second argument was addressed, and rejected, above.

The Court finds these challenges without merit and shall allow the negligent misrepresentation count to proceed.

### 5. Has Plaintiff Stated A Breach Of Fiduciary Duty Claim?

In Count IX of the FAC, Plaintiff alleges a breach of fiduciary claim against Martin, Tarrant, and King. In that Count, Plaintiff alleges that "Martin, Tarrant and King as Officers and Directors of LightSpeed Inc. have breached common law fiduciary duties and obligations to Plaintiff, as a beneficial shareholder in LightSpeed Inc., with regard to the disposition of the invested funds." (FAC at ¶ 170). He alleges that "Martin, Tarrant and King breached their fiduciary duty to the Plaintiffs [sic] by failing to properly protect the Plaintiff's investment in LightSpeed Inc." (FAC at ¶ 173).

Defendants' Motion to Dismiss asks the Court to dismiss this claim because it is a derivative, corporate waste claim that Plaintiff lacks standing to bring.

Plaintiff does not dispute that he cannot bring a derivative claim under Delaware law. Rather, Plaintiff contends that his breach of fiduciary claim is not a derivative claim because he suffered injuries distinct from other shareholders.

At the May 19, 2013 hearing, Plaintiff's Counsel stated that the breach of fiduciary claim is based on Delaware law, not Michigan law. Thereafter, the Court ordered the parties to submit

35

supplemental briefs on the issue, which they have filed.

The issue of whether a stockholder's claim is derivative or direct, under Delaware law, "must turn *solely* on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004) (emphasis in original). "Put simply, to assert a direct claim, the plaintiff must 'demonstrate [ ] that he or she can prevail without showing an injury to the corporation." *Protas v. Cavanagh*, 2012 WL 1580969 (Del. Ch. 2012) (citing *Tooley, supra*).

In *Tooley*, the Delaware Supreme Court explained that a claim asserted on behalf of the corporation, under which the corporation would receive the benefit of recovery, is derivative. *Id.* at 1036.   As such, a claim for the mismanagement of corporate assets by directors of the corporation or company is derivative. *Id.* at 1037; s*ee also Bokat v. Getty Oil Co.*, 262 A.2d 246 (Del. 1970); *Kramer v. Western Pacific Industries, Inc.*, 546 A.2d 348, 352 (Del. 1988); *McCarthy v. Middle Tennessee Elec. Membership Corp.*, 466 F.3d 399,409-10 (6th Cir. 2006).

In contrast, a claim asserting injury to the stockholder's legal rights individually, and under which the stockholder would receive the benefit of recovery, is direct. *Id.* "The stockholder's claimed direct injury must be independent of any alleged injury to the corporation" and "the stockholder must demonstrate the duty breached was owed to [him or her]." *Id.* at 1039.

Here, Plaintiff's FAC alleges that Defendants Martin, Tarrant  and King breached their fiduciary duties owed directly to him "as a beneficial shareholder" in LightSpeed E.I. by "failing to properly protect the Plaintiff's investment in LightSpeed [E.I.]."  (FAC at 30-31).  The Court

36

agrees with Defendants that, as written, this claim pleads a derivative action.  Plaintiff does not allege that he suffered an injury that is separate and distinct from other shareholders of LightSpeed E.I.  Accordingly, this count shall be dismissed.

### 6.    Does Plaintiff's Civil Conspiracy Claim Fail?

Citing *Future Now Enter., Inc. v. Foster*, 860 F.Supp.2d 420, 429 (E.D. Mich. 2012), Defendants asserts that an "actionable civil conspiracy claim fails as a matter of law unless the plaintiff establishes a separate, actionable tort."  Defendants assert that the Court should dismiss Plaintiff's civil conspiracy claim (Count I of Plaintiff's FAC) because the FAC fails to sufficiently allege an underlying claim.

Given the Court's above rulings, it shall deny this ground for relief because Plaintiff has sufficiently alleged underlying claims.

## IV.    Challenges To Personal Jurisdiction

There are two pending motions wherein a defendant challenges this Court's exercise of personal jurisdiction.

Federal Rule of Civil Procedure 12(b)(2) allows the Court to dismiss an action for lack of personal jurisdiction.  FED. R. CIV. P. 12(b)(2).  The burden of establishing personal jurisdiction over a defendant rests with the plaintiff.  *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002).  "[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleading but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

A district court has discretion to "decide the motion upon the affidavits alone; . . . permit discovery in aid of deciding the motion; or . . . conduct an evidentiary hearing to resolve any

apparent factual questions." *Theunissen*, 935 F.2d at 1458; *McCluskey v. Belford High Sch.*, 795 F. Supp.2d 608, 615 (E.D. Mich. Dec. 30, 2010). When the Court does not conduct an evidentiary hearing, the plaintiff need only make a *prima facie* showing of personal jurisdiction. *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510 (6th Cir. 2006). In this procedural posture, the Court "do[es] not weigh the facts disputed by the parties but instead consider[s] the pleadings in the light most favorable to the plaintiff, although [the Court] may consider the defendant's undisputed factual assertions." *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012).

### A.   The Court Shall Dismiss Defendant Martin For Lack Of Personal Jurisdiction.

On November 13, 2012, Defendants LightSpeed E.L., Unicell Ltd., and Martin filed a Motion to Dismiss for Lack of Personal Jurisdiction. (D.E. No. 16). Although LightSpeed E.L. and Unicell Ltd. later withdrew their personal jurisdiction challenges and stipulated to this Court having personal jurisdiction over them, Martin did not. Thus, his Motion to Dismiss based on lack of personal jurisdiction is still pending before the Court.

This action was filed in this Court based upon both federal-question jurisdiction and diversity jurisdiction. Plaintiff asserts both state-law claims and federal security-law claims against Martin.

Plaintiff's FAC alleges that "this Court has limited jurisdiction over the non-resident individual Defendants," which includes Martin, "pursuant to MCL § 600.705 because the non-resident individual Defendants did substantial business in Wayne County and Oakland County, Michigan as individuals and as agents of corporate entity Defendants through at least the

activities described in this Complaint, and each committed a violation of United States securities laws and several torts in Wayne County and Oakland County, Michigan, and such acts relate to the matters at issue in this Complaint."  (FAC at ¶ 17).  Thus, the FAC alleges specific jurisdiction, not general jurisdiction, over Martin.

As explained below, although two slightly different standards apply, the analysis ultimately comes down to the same determination – whether: 1) Martin purposely availed himself of the privilege of acting in Michigan/the United States or purposely caused a consequence here; 2) the causes of action against Martin arise from his actions here; and 3) the exercise of jurisdiction by this Court is reasonable under the circumstances of this case.  A failure as to any one of those three means the Court cannot exercise jurisdiction over Martin.

### 1.    Standard For Personal Jurisdiction Over Martin As To Plaintiff's State-Law Claims

Specific jurisdiction involves the defendant's contacts with the forum state. *See Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 981 (6th Cir. 1992).   "In determining whether it can assert personal jurisdiction over a nonresident defendant in a diversity case, a district court must apply the law of the state in which it sits, subject to due process limitations." *Creech v. Roberts*, 908 F.2d 75, 79 (6th Cir.1990).  Under the Michigan long arm statute, the Court may exercise specific personal jurisdiction over a nonresident defendant in an action arising out of an act which creates any of the following relationships:

> (1) The transaction of any business within the state.
> (2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.
> (3) The ownership, use, or possession of real or tangible personal property situated within the state.
> (4) Contracting to insure a person, property, or risk located within this state at the

39

time of contracting.
(5) Entering into a contract for services to be rendered or for materials to be furnished in the state by the defendant.
(6) Acting as a director, manager, trustee, or other officer of a corporation incorporated under the laws of, or having its principal place of business within this state.
(7) Maintaining a domicile in this state while subject to a marital or family relationship which is the basis of the claim for divorce, alimony, separate maintenance, property settlement, child support, or child custody.

M.C.L. § 600.705.   Plaintiff only asserts that subsections (1) and/or (2) apply here.  (*See* D.E. No. 25 at 11).

Because Michigan's long-arm statue extends to the limits permitted by the Due Process Clause, the Court is only required to analyze whether the exercise of jurisdiction would violate constitutional due process.  *Lifestyle*, 768 F.Supp.2d at 933; *Intera Corp. v. Henderson*, 428 F.3d 605, 616 (6th Cir. 2005) ("When a state's long-arm statute reaches as far as the limits of the Due Process Clause, the two inquiries merge and the court need only determine whether the assertion of personal jurisdiction violates constitutional due process.").  To determine whether the exercise of personal jurisdiction over a defendant would be consistent with due process, the Court considers: 1) whether the defendant has purposefully availed himself of the privilege of acting in the forum state or causing a consequence to occur there; 2) whether the cause of action arises out of the defendant's activities in the forum; and 3) whether the exercise of personal jurisdiction is reasonable based on the defendant's contacts with the forum.  *Southern Mach. Co. v. Mahasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir.1968).

### 2.   Standard For Personal Jurisdiction Over Martin With Regard To Plaintiff's Federal Security-Law Claims

"The Securities Exchange Act includes a nationwide service-of-process provision" and

therefore the "forum" for purposes of the personal jurisdiction analysis over the security-law claims asserted against Martin is the United States, rather than the state of Michigan. *City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 665 n.15 (6th Cir. 2005); *United Liberty Ins. Co. v. Ryan*, 985 F.2d 1320, 1330 (6th Cir. 1993).

Whether personal jurisdiction exists over Martin in the context of a securities fraud case depends on whether Plaintiff can make a prima facie showing of the following: 1) first, Martin must have purposely availed himself of the privilege of acting in the United States or have purposely caused a consequence in the United States; 2) Second, the *cause of action must arise from Martin's actions in the United States*; and 3) Finally, the exercise of jurisdiction by a court within the United States over Martin must be reasonable under the circumstances of this case. *City of Monroe Employees Ret. Sys.,* 399 F.3d at 665 (emphasis added).

### 3.   Application

To recap, in order for this Court to exercise personal jurisdiction over Martin, it is Plaintiff's burden to establish that: 1) Martin purposely availed himself of the privilege of acting in Michigan/the United States or purposely caused a consequence here; 2) the causes of action against Martin arise from his actions here; and 3) the exercise of jurisdiction by this Court is reasonable under the circumstances of this case. A failure as to any one of those three means the Court cannot exercise jurisdiction over Martin.

Here, this Court need go no further than the second requirement – that the causes of action against Martin arise from his actions in Michigan/the United States.

As Martin notes in his Reply Brief, the "underlying claim at the heart of this case is that Defendants fraudulently induced [Plaintiff] into investing in LightSpeed [E.I.] by making

41

material misrepresentations *before* his purchase."  (Martin's Reply Br. at 1) (emphasis in original).  But Plaintiff does not allege that he met with Martin anywhere in the United States until after he had already purchased stock in LightSpeed E.I.  Plaintiff's FAC alleges that Plaintiff purchased the stock in October of 2011.  The allegations as to contacts with Martin relate to meetings in the United States attended by Martin in *April of 2012.*  By then, *Plaintiff had already made the investment* in LightSpeed E.I. – so nothing said by Martin at that time could have induced his investment.  Thus, the causes of action asserted against Martin – which are all based on the underlying allegation that Plaintiff was fraudulently induced into investing in LightSpeed E.I. – did not arise from Martin's actions in the United States.

Perhaps recognizing the weakness of his personal jurisdiction argument as to Martin given his lack of actions in the United States, Plaintiff asks the Court to exercise personal jurisdiction over Martin under a variety of theories**.**  But the Court agrees those theories are not viable for the reasons advanced in Defendants' briefs.

Accordingly, the Court shall GRANT Martin's Motion to Dismiss for lack of personal jurisdiction.

**B.**   **The Court Shall Deny Unicell B.C.I.'s Personal Jurisdiction Challenge**

In Plaintiff's original Complaint, he alleged only that this Court has "limited jurisdiction" over the non-resident entity Defendants, which include Unicell B.C.I.  (*See* Compl., D.E. No. 1 at ¶ 17).  That is, the original Complaint did not allege that this Court has general jurisdiction over Unicell B.C.I.

On November 21, 2012, Unicell B.C.I. filed a Motion to Dismiss, along with some other Defendants.  (D.E. No. 18).  In that motion, Defendant B.C.I. challenged the exercise of personal

jurisdiction against it.  It did so in a one-page section of the brief.  (*See Id.* at 10).  In that Brief,

B.C.I. noted that Plaintiff "has only alleged that this Court has limited jurisdiction" over it.  (*Id*.).

Unicell B.C.I.'s brief then addressed the personal jurisdiction challenge as to limited (or specific)

jurisdiction.  In doing so, it stated that its "only contact with Michigan is the sale of only twenty

truck bodies per year" that are not related to Plaintiff's claims.  The brief does not analyze

whether *general personal jurisdiction* exists over Unicell B.C.I.

After that motion and brief were filed, on December 5, 2012, Plaintiff filed his FAC (D.E.

No. 20).  Plaintiff's FAC alleges that Defendant Unicell B.C.I. is a New York corporation.  (*Id*. at

¶ 4).  The FAC alleges that this "Court has general personal jurisdiction over Unicell BC

pursuant to MCL § 600.711 because Unicell [B.C.I.] carries on a continuous and systematic part

of its general business within Michigan, including, without limitation, the sale of approximately

twenty vehicles in Michigan each year."  (FAC at ¶ 16).

On December 19, 2012, several Defendants – including Unicell B.C.I. – filed

"Defendants' Response To Amended Complaint" (D.E. No. 26) that stated that Defendants

"hereby adopt and incorporate by reference their pending motions to dismiss (Docket Numbers

16-18) as their responses to Plaintiff's First Amended Complaint (Docket No. 20)."

Accordingly, Defendant Unicell B.C.I. did not seek to amend its motion in order to assert that

this Court lacks general jurisdiction over Defendant Unicell B.C.I.

When Plaintiff responded to the Motion to Dismiss, it noted that failure.  He stated that

because Defendant Unicell B.C.I. chose "not to dispute Mr. Wang's new assertion of general

jurisdiction" the Court "should rule that any challenge as to general jurisdiction has been

waived."  (D.E. No. 30 at 2).  He also argues that general jurisdiction exists in any event.  In

doing so, Plaintiff notes that because Unicell B.C.I. is a New York corporation, it is a citizen of the United States and therefore this Court has personal jurisdiction over it for purposes of his federal security-law claims. Plaintiff also asserts that this Court has specific personal jurisdiction over it.

In its Reply Brief, Defendant Unicell B.C.I. asserts – for the first time – that its Michigan sales are insufficient to establish general personal jurisdiction over it.

The Court finds this challenge waived. Challenges that are raised for the first time in a party's reply brief are generally waived. This is because the opposing party does not have the opportunity to respond to such newly-raised arguments and therefore the challenge is not fully developed.

## V. The Court Shall Deny The Motion For Security For Costs (D.E. No. 32)

LightSpeed E.I. has filed a Motion for Security for Costs.

Under the federal standard, the Court considers three factors in deciding whether or not to impose a bond requirement and considers whether: 1) Plaintiff's claims are of dubious merit; 2) Plaintiff lacks financial responsibility; and 3) the party seeking the security would incur substantial expense. *Hardwoods, Inc. v. Universal Oil Products Co.*, 493 F.Supp. 76, 77 (W.D. Mich. 1980).

The standard under the Michigan Rule, M.C.R. 2.109(A) is similar in that the Court must find a "substantial reason" before granting a motion for security of costs and a substantial reason may exist where there is a "tenuous legal theory of liability," or where there is good reason to believe that a party's allegations are "groundless and unwarranted." *In re Surety Bond for Costs*, 226 Mich.App. 321, 331-32 (1997).

As both parties acknowledge in their briefs, the matter of requiring security rests in the discretion of the district court.

While Plaintiff may not ultimately prevail on his claims, as set forth above, the Court concludes that his FAC survives Defendants' motions to dismiss as to several claims. Thus, the Court does not find, at this stage of the litigation, that Plaintiff's claims are of "dubious merit" or "groundless and unwarranted." Moreover, although Defendant LightSpeed E.I. will likely incur substantial expenses in defending this action, it has not presented evidence to establish that Plaintiff – who was able to invest $1,000,000.00 in LightSpeed E.I. – lacks financial responsibility.

The Court shall DENY this motion.

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that the Court:

1) DENIES Plaintiff's Motion to Compel Limited Discovery (D.E. No. 53);

2) DENIES Plaintiff's "Motion To Strike Notice Of Joinder And Application For Entry Of Default And Default Judgment" (D.E. No. 50);

3) GRANTS IN PART AND DENIES IN PART Defendants' Motions that raise substantive challenges (D.E. Nos. 18 & 54), and hereby:

   a) Dismisses Plaintiff's Section 12(a)(2) claims in Count IV because he does not allege that this was a public offering, that a prospectus existed, or that there were any oral communications regarding a prospectus;

   b) Dismisses Count V, which asserts control person liability under Section 12(a)(2)

   c) Denies the motion as to the challenges asserted as to Plaintiff's 10(b) and 17(a) Claims in Count II, because Plaintiff has sufficiently alleged specific misrepresentations, justifiable reliance,

45

and scienter;

d)      Denies the motion as to the challenge to the control person liability claim under Section 10(b) and Rule 10(b)(5);

e)      Denies the motion as to Plaintiff's common law fraud and negligent misrepresentations claims in Counts VII & VIII;

f)      Dismisses Plaintiff's breach of fiduciary duty claims asserted in Count IX; and

g)      Denies the motion as to Plaintiff's civil conspiracy claims asserted in Count I.

4)      GRANTS Defendant Martin's Motion to Dismiss for Lack of Personal Jurisdiction (D.E. No. 16);

5)      DENIES Defendant Unicell B.C.I.'s Motion To Dismiss for Lack of Personal Jurisdiction (raised in D.E. No. 18); and

6)      DENIES Defendant LightSpeed E.I.'s Motion For Security Of Costs (D.E. No. 32).

IT IS FURTHER ORDERED that the parties shall appear for a Scheduling Conference on

**January 21, 2014, at 2:00 p.m.**

IT IS SO ORDERED.

S/Sean F. Cox _____
Sean F. Cox
United States District Judge

Dated:  January 3, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 3, 2014, by electronic and/or ordinary mail.

S/Jennifer McCoy _____
Case Manager